# Minge v. Clark, et al.

## Detinue.

(Decided May 20, 1915. Rehearing denied June 30, 1915. 69 South. 421.)

1. *Detinue; Action; Right to Possession.*—In order to maintain detinue, or the corresponding action for the recovery of chattel in specie, plaintiff at the commencement of the action must have a general or special property in the goods sought to be recovered, and must be entitled to immediate possession.

2. *Pledges; What Constitute.*—A pledge is a contract for the delivery of personalty by a pledgor to a pledgee, to be retained by him, as security for the performance of some obligation due him by the pledgor; the legal title remaining in the pledgor, the possession only passing to the pledgee, who has a special property in the thing pledged until the obligation thereby secured is satisfied.

3. *Same; Loss of Lien; Modification of Contract.*—Plaintiff was the owner of a cotton seed oil mill, and desiring to form a corporation, agreed with defendant to put in his plant at a valuation of $38,000, while defendants were to pay $12,000 to make the capital stock $50,000, which was to be equally divided between the parties; plaintiff also delivered to defendants stocks in other corporations as a pledge to purchase defendant's stock if a certain profit had not been made at the end of two years; subsequently it was agreed to reduce the capital stock by the withdrawal of the $12,000, which was said to be divided among the stockholders. No profits having been made, nor dividends declared defendants proposed to sell the pledged stock and the plaintiff brought detinue to recover such stocks on the ground that the subsequent agreement had superseded the original contract, Held, that while the latter contract affected the

original contract pro tanto as to the amount of stock, it did not destroy it, or render its performance impossible, and that defendants retained authority to sell the stock pledged under the original contract.

APPEAL from Marengo Law and Equity Court.

Heard before Hon. EDWARD J. GILDER.

Detinue by John H. Minge against W. C. Clark and others to recover certain certificates of stock. Judgment for defendants and plaintiff appeals. Affirmed.

LONDON & FITTS, and E. E. TAYLOR, for appellant.

GEORGE PEGRAM, DAVIS & FITE, and BANKHEAD & BANKHEAD, for appellee.

MAYFIELD, J.—Appellant sued appellees in detinue to recover 10 bonds of the Piedmont Oil & Refining Company and 25 shares of stock, of the par value of $100 each, in the Minge Mortgage & Realty Company, The bonds were by a written agreement pledged by the plaintiff to the defendants, to secure the payment of $12,000 which, on conditions mentioned, might become due from the plaintiff to the defendants. The contract containing the conditions referred to, and by which the pledge was made, and the facts upon which the rights of the parties depend, was and were as follows: "Plaintiff owned a cotton seed oil mill, and desired to form a corporation and to secure additional capital. It was agreed between the plaintiff and the defendants that a corporation of $50,000 capital stock, should be organized. The plaintiff was to furnish or put in his plant, valued at $38,000, and defendants were to pay into the corporation $12,000 in cash, and the capital stock, $50,-000, was to be divided equally between the parties. The provision of the contract as to the pledge was in part as follows: "And as a further consideration and

[Minge v. Clark, et al.]

inducement to the party of the second part taking stock in said corporation the party of the first part hereby agrees to pay and binds himself to take and pay for the stock to be so held by the party of the second part, namely, $25,000 of said stock, if at the end of two years from the date of the incorporation the corporation has failed to make a net earning of $24,000, the party of the first part agreeing to pay the party of the second part for said stock the sum of $12,000 paid therefor by the party of the second part, together with 8 per cent. interest from the date of the payment of the said $12,-000, less any dividends that may have been paid in the meantime to the party of the second part by the said corporation.

"If at the end of the said two years the said corporation shall have failed to make a net earning of $24,-000, as herein provided, the party of the second part may tender to the party of the first part the stock amounting to $25,000 in said corporation, and upon such tender the party of the first part shall, within 60 days, pay to the party of the second part the said $12,-000, with interest as herein provided."

It was also provided that on default in the payment of the debt secured, and upon the conditions contained in the contract, the pledgee could, after notice, sell the property pledged. This provision was as follows: "It is agreed that if the said $12,000 and accrued interest becomes due and is not paid within 60 days, or the party of the first part should fail to perform any of the other covenants herein, then the party of the second part may sell said bonds at public auction to the highest bidder for cash in front of the courthouse door of Marengo county, Alabama, after giving 15 days' notice by publication in some newspaper published in Ma-

rengo county, Alabama, and apply the proceeds of such sale to the payment of the expenses of sale and the payment of the said $12,000 or any balance due thereon, and to the reimbursement of the party of the second part for any breach by the party of the first part of any covenants herein. At said sale the party of the second part may become the purchaser.

The defendant was proceeding to sell the pledge, when the plaintiff brought this suit in detinue to recover the property. By a subsequent agreement in writing the property mentioned in the original contract as being pledged was substituted, by inserting the property sued for in lieu thereof. It was, however, subsequently agreed between these two parties, and the other stockholders, if there were any, that the capital stock should be reduced from $50,000 to $38,000, by drawing out the $12,000 paid in by the defendant, dividing it among the stockholders.

The corporation not only failed to make a net earning of $24,000, but failed to earn or declare or pay any dividends within the two years mentioned in the contract; and the defendant then demanded of the plaintiff the payment of the $12,000 put in by him, less the amount paid to him when the $12,000 was divided among the stockholders as above referred to. The plaintiff declined to pay the amount demanded, or any other, claiming that he owed the defendant nothing; it being his theory and contention that the subsequent agreement between the parties, whereby the $12,000 was withdrawn from the capital stock of the corporation and divided among the stockholders, reducing the capital stock from $50,000 to $38,000, had the effect to wholly annul the first contract, and especially the part above quoted; that the last agreement rendered it im-

possible for the defendant, the pledgee, to tender the $25,000 of stock, which was a condition precedent to the plaintiff's owing him the $12,000, or any other amount, and also a condition precedent to his right to sell the collateral or property pledged, and entitled the plaintiff to the right of possession as well as the ownership of the property pledged.

The trial court declined to accept plaintiff's construction of the contract, and in effect directed a verdict for the defendant. We likewise, are unable to agree with the plaintiff in his construction of the contract, and of the effect of the agreement by which the $12,000 was drawn out and the capital stock reduced. The legal effect of the contract between these parties, and upon which the right to recover in this action depends, is this : That the defendant should put in $12,000 in cash, and the plaintiff put in an oil mill plant valued at $38,-000; that the corporation should be organized with $50,000 of capital stock, and the stock was to be equally divided between the two. If the corporation did not make a net earning of $24,000 in two years, then the plaintiff was to take the defendant's half of the stock, and pay back to him his $12,000, with interest thereon. To secure this payment, the plaintiff pledged to defendant bonds and stock of other corporations, as above shown. Before the expiration of the two years the parties agreed to draw out of the corporation the $12,000 and divide it among the stockholders, and by the division defendant received $6,000 of his $12,000. There was no express agreement that this last arrangement should annul, defeat, or be substituted for the first. The corporation failed to make the net sum mentioned, or to declare any dividend; and the defendant tendered to plaintiff his $19,000 of stock, and demanded payment

of his $12,000, less the $6,000 which had been paid to him as a stockholder.

The plaintiff denied any indebtedness, and declined to pay, and the defendant thereupon attempted to foreclose the pledge by a sale of the security in accordance with the provisions of the original contract, and plaintiff then had the property seized under the writ of detinue.  There is nothing to show that the original contract was annuled or rescinded, nor to terminate the right of the defendant to hold the pledged property as security for the payment of the money due the defendant. While, of course, there is a difference between a pledge and a mortgage, both are securities for the payment of debts or money.

(1)  The general rule is that to maintain detinue, or the corresponding statutory action for the recovery of chattels in specie, the plaintiff must, at the commencement of the action, have a general or special property in the goods sought to be recovered, and must be entitled to the immediate possession—*Gafford v. Stearns,* 51 Ala. 434; *Mervine v. White,* 50 Ala. 388; *Pierce v. Jackson,* 56 Ala. 599; *Henderson v. Felts,* 58 Ala. 590; *Rees v. Coats,* 65 Ala. 256; *Jackson v. Rutherford,* 73 Ala. 155; *Russell v. Walker,* 73 Ala. 315; *Cooper v. Watson,* 73 Ala. 252; *Seals v. Edmonson,* 73 Ala. 295, 49 Am. Rep. 51; *Graham v. Myers,* 74 Ala. 432; *Gluck v. Cox,* 75 Ala. 310.

(2)  While the plaintiff in this case had the legal title, he did not have the right to the immediate possession, against this defendant, who held the property as security for a debt or demand against the plaintiff. A pledge or pawn is a kind of bailment and securtiy. It is a contract for the delivery of personalty by a pledgor to a pledgee, to be retained by the latter as security

for the performance of some obligation due him from the obligor. It differs from a mortgage, in that the legal title passes from the mortgagor, subject to be divested by the performance of the conditions of the mortgage. In cases of pledges no such results follow merely from the pledge. The legal title remains in the pledgor, even after the delivery of the property to the pledgee, and after failure of the pledgor to perform the obligations or conditions of the contract. The possession only passes with the qualified power of disposition. The pledgee, however, has a special property in the thing pledged, and is entitled to the possession of it until the obligation secured is satisfied; he is entitled to this against the pledgor and the world, and may maintain appropriate actions for the protection of his possession and his security, of course according to the contract of the pledgee.—*Notes v. Marble Co.,* 50 Ala. 366; *Luckett v. Townsend,* 3 Tex. 119, 49 Am. Dec. 723, and notes.

(3) The authorities relied upon by appellant are not in point. There was no new contract between these parties that entirely destroyed the original contract or rendered its performance impossible; while the latter contract did affect it pro tanto, as to the amount of stock—that is, the number of shares—which the defendant should deliver to plaintiff, and the amount of money which the plaintiff should pay the defendant, but only pro tanto. The defendant did tender 19 shares of stock, which was all he had, and was one-half of the whole, which the contract in effect provided for. The defendant was not entitled to $12,000, because he had theretofore received $6,000, and he did not demand anything except what was due him. We hold that the subsequent agreement as to the reduction of the stock from

$50,000 to $38,000 did not have the effect to destroy the contract of the pledgor, but only affected it pro tanto, as we have above shown.

We find no error, and the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.