71 So.2d 70

**LAUDERDALE COUNTY CO-OP., Inc.**

v.

**LANSDELL et al.**

8 Div. 627.

Supreme Court of Alabama.

March 11, 1954.

454

Bradshaw, Barnett & Haltom, Florence, for appellant.

Mitchell & Poellnitz, Florence, for appellees.

PER CURIAM.

This suit was begun by an action at law by these appellees, to whom we will sometimes refer as Lansdell, against Lauderdale County Co-operative, Inc., to which we will sometimes refer as co-operative.

The complaint originally contained one count claiming damages against defendant which was a warehouseman, with which plaintiffs had on November 5, 1947 stored twenty-six bales of cotton, binding defendant by its contract to the ordinary duties of such warehouseman, and for which it was paid a reward. On February 13, 1948 the cotton was damaged by water, and on March 1, 1948 defendant agreed with plaintiffs that it would "cause said cotton to be reconditioned, dried, and repacked and to return said cotton in as good or better con-

dition as it was at the time said cotton was stored as aforesaid with defendant"; and that defendant breached said contract. Demurrer was filed to it at law. An amendment was filed to the complaint adding certain details and another count. The amendment did not in any respect change the nature of the suit or cause of action.

Defendant filed what is designated as an answer and pleas setting out its version of the transaction referred to in the complaint. It did not appear that an equitable defense was interposed either in the demurrer or pleas. The answer and pleas undertook to show that there was a small amount due plaintiffs, and a tender of that amount which was paid into court. The answer is more like an answer to a bill in equity than pleas at law. It also denies certain material allegations of the complaint.

Plaintiffs demurred to the "pleas". The next proceeding was a motion by plaintiffs to transfer the cause to the equity docket; and on March 22, 1950 an order was made transferring the cause into equity. The order of the court recites the appearance of the parties, and that the motion being sworn to and no other proof submitted "the court is of the opinion that plaintiffs did not and do not have such legal title to the cotton which is the subject of this suit as would support an action at law and further that there is presented an equitable question or right, the decision of which", etc. following the language of section 152, Title 13, Code.

The equitable claim, which is referred to, is stated in the bill which was later filed. A demurrer was filed to the bill assigning among other grounds that plaintiffs can maintain their action at law and that whatever rights they have, as alleged in it, are there available.

The demurrer was overruled, and the cause went on to a final decree in favor of plaintiff against said defendant for a substantial sum. The Commodity Credit Corporation was made a respondent to the bill and it moved to dismiss the bill as to it. That motion was granted in the final decree and no decree was rendered against that respondent on final submission.

A summary of the facts as stated in the bill, on which it was thought to give it equity, supplementing the allegations of the complaint on the law docket, is in substance as follows: That on said November 5, 1947 Lansdell delivered the receipts for said twenty-six bales of cotton to the respondent co-operative with the request that they be put in the "pool" with the Commodity Credit Corporation and that an advance or loan be made on them to Lansdell. That Lansdell later entered into a contract with co-operative and with Commodity Credit Corporation, acting by said co-operative, in accordance with certain forms of agreement prescribed by Commodity Credit Corporation. That pursuant to said contracts Lansdell delivered said cotton to co-operative at its warehouse, paid the storage charges, paid the delivery charges and other expenses and received an advance from Commodity Credit Corporation in a specified amount. That by said contract Lansdell was entitled to sell said cotton and withdraw the same from said "pool" if they could get a higher price than the loan value at any time prior to July 31, 1948.

The bill then sets out the facts as alleged in the complaint at law about the water damage and the agreement between Lansdell and co-operative; that co-operative would dry the cotton of complainants and pay for the irreparably damaged portion at the market value on the date of the water damage, "which payment would be by said respondent (co-operative) credited against the amount of the aforesaid loan with the Commodity Credit Corporation and return to complainants the less damaged portion dried and in as good or better condition than said cotton was before the said water damage and of market value equal to or better than before said damage. Thereafter respondent, Lauderdale County Co-operative, did dry or cause to be dried the said cotton, less the irreparably damaged portion of said cotton, which damaged portion complainant is informed and believes, and on such information and belief alleges the fact to be amounted to 1,853 pounds, and did return or cause to be returned to complainants or to said respondent's warehouse the balance of said cotton but respondents failed to comply with and did breach the said contract of compromise in this, to wit: that said cotton was repacked, rebaled and not in as good condition as it was before the said water damage and had a less market value than it did prior to said water damage and less said irreparably damaged portion (1,853 pounds). That said amount to be paid complainants for said irreparably damaged portion of said cotton (1,853 pounds) was not credited on complainants' loan to respondent Commodity Credit Corporation, but was held by respondent Lauderdale County Co-operative and a part thereof applied by it as an offset in its settlement with Commodity Credit Corporation and the balance, the exact amount of which is unknown to complainants, retained by respondent Lauderdale County Co-operative. Upon notice from respondent Lauderdale County Co-operative that said cotton, less said irreparably damaged portion thereof, had been returned to its warehouse and before July 31, 1948, the market value of said cotton increased and complainants attempted to sell their said cotton and were prevented from doing so by reason of the fact that the cotton was not in as good or better condition as it had been prior to the water damage of February 13, 1948. On the contrary, said cotton was unmerchantable". And in amended paragraph V, it is alleged that "On or after July 31, 1948, the respondent Commodity Credit Corporation took possession of said cotton under the said agreements and in, to wit, the year 1949, subsequent to the filing of this action by complainants (at law) disposed of same and delivered to the respondent Lauderdale County Co-operative a check for the amount in excess of its loan, the amount of which is unknown to these complainants, for the use and benefit of the complainants. The respondent, Lauderdale County Co-operative, according to the information and belief of complainants, deducted from said check delivered to it by the respondent, Commodity Credit Corporation, certain storage charges and has tendered to complainants the balance after such deductions, to wit, the sum of $296.56 in full settlement of this case, which tender has been refused by these complainants."

The facts found and recited in the decree correspond with the allegations of the bill. In part they are as follows:

"It is the opinion of the court, and it is so ordered, adjudged and decreed that the co-operative breached the terms of a valid new agreement entered into by the co-operative Lansdell shortly after the date of the water damage to the cotton in that the salvage cotton, to wit: 12,009 pounds was not in as good condition as before the water damage but was unmerchantable at the market price and the Lansdells were thereby prevented from selling it at 37 cents per pound and consequently were unable to redeem the cotton, and that the complainants are entitled to recover from the respondent, co-operative, damages for the breach of that agreement and it is so ordered, adjudged and decreed.

"It is further ordered, adjudged and decreed that the complainants are credited with the following:

"12,009 pounds of cotton at 37
   cents per pound........... $4,443.33
"1,853 pounds of ruined cotton
   for which the then market
   price allowed ............. 594.29

"Total credits due complainants $5,037.62.

"It is further ordered, adjudged and decreed that complainants should be charged with the following:
"Loan on 26 bales of cotton on
   November 5, 1947.......... $3,909.76
"Interest on $3,909.76 for 8
   months, 25 days at 3% being
   from date of loan, to wit:
   November 5, 1947 to redemp-
   tion expiration date of, to
   wit: July 31, 1948........ 86.16
"Storage of 26 bales of cotton
   at 35¢ per bale per month
   for 8⅝ months being from
   November 5, 1947 to re-
   demption expiration date of,
   to wit: July 31, 1948...... 80.30
"Insurance of 19¢ per bale per
   month for 8⅝ months being
   for same period........... 43.52

                    $4,119.74

"Subtracting the charges against
   Lansdell from the credits
   due him leaves due the com-
   plainants as of July 31, 1948,
   the sum of ................ 917.88
"Interest thereon at 6% per an-
   num from July 31, 1948 to
   date or 3 years, 2½ months 176.69
"Total amount due Lansdells,
   12% thereof to Ralph J.
   Lansdell and 88% thereof to
   M. R. Lansdell........... $1,094.57."

The evident theory on which the equity of the bill is sought to be maintained is that at the time of the water damage Lansdell had pledged the cotton to Commodity Credit Corporation as security for a loan, and did not have the legal title to the cotton at the time it was damaged, so as to justify a suit at law against co-operative as the warehouseman holding the cotton in storage under warehouse receipts issued by it. It is not alleged whether those receipts are negotiable or non-negotiable, Title 2, sections 507–508: nor whether they were negotiated (section 546), or transferred (section 547). But it is alleged that they were delivered to Commodity Credit Corporation. The proof shows that there was an assignment in writing on the receipts.

The allegations of the bill and the findings by the court, and its interpretation of the facts on that basis, are that the claim is founded and sustained on a valid new agreement entered into by co-operative and Lansdell shortly after the water damage to the cotton.

■ There was no complicated accounting involved necessary for equity to state. In fact no accounting was rendered by the court. The trial judge simply made a computation of the figures based upon the facts which he found in accord with the contentions of complainants Lansdell. They do not support equity jurisdiction for an accounting. Ex parte Deaton, 243 Ala. 154, 8 So.2d 819.

■ The deposit of warehouse receipts with Commodity Credit Corporation by Lansdell as security for a loan were by

their agreement redeemable upon payment of the loan on or before July 31, 1948. That created the relation of pledgor and pledgee between Lansdell and Commodity Credit Corporation. It was a pledge of the cotton itself; and being done by a written instrument with delivery of the pledged property, the transaction partook of the nature of both a pledge and a mortgage. Gilmer v. Morris, 80 Ala. 78(85); Oden v. Vaughn, 204 Ala. 445(7), 85 So. 779.

■■■ It is essential to the relation of pledgor and pledgee that possession of personal property be delivered to the pledgee as security for the performance of an obligation by the pledgor to him. A writing is necessary to create a mortgage. Section 2, Title 20, Code. A pledge is of common law origin, though we now have some statutes which are controlling. Sections 9–13, Title 9, Code. The property may be physically delivered to the pledgee or it may be done symbolically: that is, by the delivery of a warehouse receipt as a delivery of the cotton, or by the delivery of a note as the delivery of the debt represented by the note. To constitute a pledge a writing is not necessary between the pledgor and pledgee. The delivery of possession of the personal property, without a written instrument, is the typical manner of creating such relation. If that is all that is done to that end, specifically, if there is no writing whereby the title passes to the pledgee, and if there is no statute to the contrary, the effect is to create in the pledgee a special interest in the property, less than the legal title, but in the nature of a trust whereby the pledgee is authorized to sell the property and convey the pledgor's property interest to satisfy the obligation if not fulfilled by the time when it should have been. Until that sale occurs the general ownership of the legal title remains in the pledgor. Keeble v. Jones, 187 Ala. 207, 65 So. 384; Minge v. Clark, 193 Ala. 447, 69 So. 421; May v. Stallings, 245 Ala. 292, 16 So.2d 870.

■■■ But the pledgor cannot maintain a suit at law which requires the plaintiff to have not only the legal title but also the right to its immediate possession when the cause of action arose, such as trover for conversion. He may maintain any form of action available to one who has a property interest but not the right to the immediate possession, such as case. May v. Stallings, supra.

■■■ The relation of pledgor and pledgee may exist with respect to a note or an account as the property pledged. If this is done by a written assignment, passing the title to the pledgee who is also a beneficial owner, it partakes of the nature of both a pledge and a mortgage. The pledgor retains only an equity of redemption, similar to that of a mortgagor, in respect to the collection and enforcement of the transferred claim. Gilmer v. Morris, 80 Ala. 78(85). Such nature of property is not often subjected to destruction, creating a tort action. The question as to the respective rights of the pledgor and pledgee of such property usually arises in respect to the collection of the pledged account or claim. The title having passed by the written assignment, the pledgor cannot sue the debtor for the recovery of the debt without the consent of the pledgee. Alabama Terminal & Improvement Co. v. Knox, 115 Ala. 567, 21 So. 495. And if the legal title and beneficial ownership of the debt are in the pledgee, he is the only one who can sue at law for the debt unless he consents for the pledgor to do so. Alabama Terminal & Improvement Co. v. Knox, supra; Coats v. Mutual Alliance Trust Co., 174 Ala. 565, 56 So. 915; Oden-Elliott Lumber Co. v. Butler County Bank, 213 Ala. 84, 104 So. 3.

■■■ Under such circumstances the pledgor may go into equity to redeem from the pledgee the debt so pledged, Gilmer v. Morris, supra, or under some circumstances to force a primary debtor to pay his debt and relieve the property of the pledge. City of Albertville v. Universal Electric Construction Co., 241 Ala. 412, 3 So.2d 301.

■■■ In the instant case, a warehouse receipt for cotton was pledged by Lansdell to Commodity Credit Corporation to secure

a debt for borrowed money. The co-operative was the warehouseman which issued the receipt. Its delivery to Commodity Credit Corporation was a pledge of the cotton represented by the receipt. Such a receipt may be either negotiable or non-negotiable, dependent upon its terms. Sections 507, 508, Title 2, Code. But whether one or the other, it is provided by sections 549, 550, Title 2, Code, that its transfer either by indorsement or by mere delivery passes the legal title. So that the "deposit" of such receipts with Commodity Credit Corporation as a pledge passed to it the legal title of the cotton. This is all alleged in the bill. Therefore, by such pledge the legal title of the cotton having passed from Lansdell to Commodity Credit Corporation, there was left in Lansdell only an equity of redemption but with an interest in the property which would support an action on the case for its negligent or other wrongful destruction. That was Lansdell's status when the cotton was damaged.

 If this were an action by Lansdell against co-operative for negligence in causing damage to his interest in the cotton, plaintiff could probably maintain a suit in case at law for it. If the suit were in trover for its conversion, it probably could not be maintained. After the pledge to Commodity Credit Corporation, Lansdell did not have such title and right to possession as was necessary to maintain that suit. The suit was on neither such cause of action. But after the pledge to Commodity Credit Corporation, the cotton was damaged by flood waters. Whether there was a liability on that account by co-operative as a warehouseman is not here involved. But after said flood, by reason of such claim, co-operative is alleged to have made an agreement with Lansdell as to the damaged cotton so as to protect Lansdell from loss in respect to the same. Lansdell sued co-operative at law for damages for a breach of that contract. That is the suit which was transferred to equity and here involved. Lansdell is not seeking to enforce any right which he may have retained in the cotton, nor redress any damage to it, and did not sue at law in such manner and form as to require him to have the legal

title to the cotton to sustain the suit. He had an interest in the cotton, whether legal or equitable, and a claim that co-operative was liable for the damage to that interest, and that was a valuable consideration for the contract with co-operative to recoup the loss from such damage to that interest. It takes no court of equity to recover damages for the breach of such a contract.

The demurrer should have been sustained by the trial court and the cause retransferred to the law docket. The decree of the trial court overruling the demurrer and the final decree granting relief should be reversed and a decree here rendered sustaining the demurrer and retransferring the cause to the law docket whence it came.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Reversed, rendered and retransferred to the court of law.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MERRILL, JJ., concur.