281 So.2d 632

George Lewis BAILES, Jr., as Trustee in Bankruptcy of American Southern Publishing Co., Inc., a corp., Bankrupt

v.

The FIRST NATIONAL BANK OF MOBILE, etc., et al.

SC 210.

Supreme Court of Alabama.

July 5, 1973.

Rehearing Denied Aug. 30, 1973.

R. Clifford Fulford, Birmingham, and I. David Cherniak, Mobile, for appellant.

**386**

Louis E. Braswell, Mobile, for appellees.

FAULKNER, Justice.

Appellant, Bailes, as trustee in bankruptcy for American Southern Publishing Company, Inc., a corporation, appeals from an adverse ruling of the Circuit Court of Mobile County, denying his motion for new trial. American Southern, a publisher of books, whose principal business office was in Tuscaloosa, Alabama, filed a petition in bankruptcy for a receivership.

On October 7, 1966, Bailes was appointed and qualified as receiver. On April 11, 1967, an order was entered converting the proceeding to straight bankruptcy.

Bailes was appointed and qualified as trustee. Prior to bankruptcy American Southern was under contract with the State of Alabama to sell and deliver certain textbooks to the State's public schools. This constituted about seventy per cent of American Southern's business. The books were located in Ebsco's warehouse in Birmingham, Alabama, who held them as agent for American Southern for storage, and shipping on order of the State. They also sold and delivered books to other customers. All of the books were commingled at the agent's warehouse with books of approximately fifty other publishers served in a like manner by the agent. American Southern suffered financial difficulties and sought help from the First National Bank of Mobile. On June 24, 1966, the warehouse prepared and sent to the Bank a certified copy of an inventory of American Southern books held by it. This was done at American Southern's request. From August 22, 1966, through September 30, 1966, American Southern borrowed $115,102.05 from the Bank. It executed eleven 8% interest-bearing promissory notes to the Bank for money borrowed in various amounts.

All of the notes, which were form notes except Note # 9, bore the following language pertaining to collateral security:

"There has been deposited and pledged as collateral security for the payment of this note . . . ."

And typed in the body of the note:

"Books valued at $166,980.95 covered by Publishers' Warehouse Division of EBSCO Investment Services, Inc. receipt dated June 24, 1966. Copy of receipt attached hereto."

The "receipt" was certified by Publisher's general manager as being a complete inventory of American Southern's books warehoused at Publisher's as of March 31, 1966.

Note # 9, dated September 20, 1966 in the amount of $6,104.48, unlike the others, stated, as to security:

"There has been deposited and pledged as collateral security for the payment of this note . . . ."

And typed in the body of the note:

"Assignment in part of invoice No. 16570 to State of Alabama for $6,537.48, less 8% due to be paid to Publishers' Warehouse, Division of EBSCO Investment Services, Inc., when invoice is paid. Copy of invoice attached hereto."

The Bank had no recorded security of any kind, nor any warehouse receipt, and never had possession of the books. The Bank claimed a common law pledge of American Southern books stored in Ebsco's warehouse. This pledge is alleged to have arisen from correspondence between the Bank, American Southern, and Ebsco.

In a letter dated July 7, 1966, American Southern wrote the warehouse:

"This is to advise you that we recently concluded a working agreement with the First National Bank of Mobile, Alabama for a loan and as a form of collateral we made a consignment of our inventory now warehoused in the Publisher's Warehouse. A duplicate shipping document of all shipments made relative to the shipment of our inventory report dated March 31, 1966 will be sent to the First National Bank in Mobile, Alabama to the attention of Mr. H. Austill Pharr. When this loan has been satisfied and a release has been granted jointly between this office and Mr. Pharr of the First National of Mobile, Alabama, you will be notified."

On July 21, 1966, the Bank wrote the warehouse quoting verbatim the letter of July 7, 1966, and then added:

"We would prefer that your receipt be to our bank covering these books; but if that is not in line with your policy, we would want to know that you do recognize the assignment of your receipt by the American Southern Publishing Company which we hold. What we are trying to accomplish is that we want to

know that these books will not be moved out except on order confirmed by us. Any suggestions to accomplish the above will be appreciated."

On August 19, 1966, the warehouse agreed with the Bank in a letter:

"We hereby agree, to the extent we can legally do so, that we will not ship any more of said books from our warehouse without your consent."

This letter was also signed by American Southern to signify its approval and consent. A list of the warehoused books was attached to the letter. And, in the letter the warehouse also certified that a certain dollar value of books was stored with the warehouse. On July 19, 1966, American Southern made the Bank a loss payee under the fire insurance policy on the books in the warehouse.

Before the appointment of Bailes as receiver on October 7, 1966, two shipments of books were made by Ebsco to the State of Alabama. The proceeds of the sale were deposited in American Southern's escrow account in the Bank. The first shipment was made without the Bank's consent. The second was made with the Bank's consent. This shipment involved the assignment of the invoice hereinabove mentioned in Note # 9. There were some small shipments made without the Bank's consent.

The trustee, after his appointment, continued to make sales of the books to the State of Alabama, and by agreement between the trustee and the Bank, the proceeds of the sales were deposited in the Bank. On July 12, 1968, the Bank paid over to the trustee $9,051.37. It retained $119,820.50 (principal $109,087.57, and interest $10,732.93) in the escrow account, subject to a final disposition of its claim by a court having jurisdiction to determine the controversy between the parties.

Bailes, as trustee, brought a turn-over proceeding against the Bank to recover the funds derived from the sales of books.

The Referee issued a summary order directing the Bank to turn over the funds. The bank objected that the Referee had no summary jurisdiction, and to the turn-over order. This order was affirmed by the District Court. The Bank appealed to the United States Circuit Court of Appeals for the Fifth Circuit. The Circuit Court reversed, holding that American did not have physical or constructive possession of the books. In Re American Southern Publishing Company, 426 F.2d 160 (1970), cert. denied Bailes v. First Nat. Bank, 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970). Hence, the Referee did not have summary jurisdiction. The court then stated that, "This ruling is, of course, without prejudice to the resolution of the proper disposition of the contested funds in a plenary proceeding." Ebsco disclaims any interest in the matter.

Appellant states in his brief, "This appeal is yet another peregrination in our odyssey for a decision on the merits by a Court having jurisdiction." The appellee states in its brief, "The question presented by the case at bar is whether the books had been pledged to the Bank." We agree that the sole question for us to determine is whether there was a valid pledge of the books to the Bank.

■ We are of the opinion that no valid pledge of the books to the Bank existed. A pledge is a kind of bailment and security. It is a contract for the delivery of personal property by the pledgor to the pledgee, to be retained by the pledgee as security for the performance of an obligation due him from the pledgor. The legal title remains in the pledgor. Only possession passes to the pledgee who has a special interest in the property pledged until the obligation secured by it is satisfied. Minge v. Clark, 193 Ala. 447, 69 So. 421 (1915). For the relationship of pledgor and pledgee to exist, possession of the personal property must be delivered to the pledgee as security for the performance of an obligation by the pledgor due him. Lauderdale County Co-op., Inc. v. Lansdell,

260 Ala. 452, 71 So.2d 70 (1954). Delivery of the property may be made symbolically by the delivery of a warehouse receipt as delivery of the property, or by delivery of a note as the delivery of a debt represented by the note. Lauderdale County Co-op., Inc., supra. But, as this court stated in Clanton Bank v. Robinson, 195 Ala. 194, 70 So. 270 (1915), the delivery of possession of the goods to the pledgee may be actual, constructive, or symbolical, but it must be clear, unequivocal, complete, and effective at all times so as to give notice to third parties of the pledgee's rights. We note from the record in this case that only the Bank, the warehouse, and American Southern, were aware of or had notice of the financial arrangement between the Bank and American Southern. The record shows that American retained, from the correspondence between it and the Bank, the right to continue selling its books, and directing the warehouse to make delivery thereof to the purchasers even though the proceeds of the sales were deposited with the Bank. We fail to find in the record that the Bank exercised any dominion over the books. Indeed, the records show that the books of other publishers were so commingled with American Southern books, it would have been most difficult for the Bank to identify its so-called "pledged books". The Bank had no key to the warehouse, nor any warehouse receipt, and, it did not have actual possession of the books. Consequently, we are not informed as to how the Bank could have foreclosed its alleged security set forth in the notes executed by American Southern to it.

From the record it appears that the financial arrangement between the Bank and American Southern was assignment of accounts receivable and therefore such assignment would be ineffective as against the creditors of American Southern. Title 20, § 1, Code of Alabama 1940, Recompiled 1958. Lewis v. Bank of Mobile, 204 Ala. 689, 87 So. 176 (1920). For this reason we hold that the Bank's theory of res adjudicata based upon the Fifth Circuit opinion

is without merit. See Irwin v. Alabama Fuel & Iron Company, 215 Ala. 328, 110 So. 566 (1925).

Reversed and remanded.

MERRILL, HARWOOD and MADDOX, JJ., concur.

HEFLIN, C. J., concurs in the result.