233 So.2d 500

Jimmy McCLURE

v.

Charles R. DANIEL, Individually and as Personal Representative of S. H. Daniel, Deceased.

8 Div. 15.

Court of Civil Appeals of Alabama.

March 25, 1970.

Morring, Giles, Willisson & Kronenberg, Huntsville, for appellant.

**560**

Harris & Harris, and William E. Shinn, Jr., Decatur, for appellee.

WRIGHT, Judge.

This matter began by suit filed in the Circuit Court of Morgan County. The complaint was substantially in code form for the recovery of rents due under a writ-ten lease, wherein appellee was the lessor, and appellant the lessee. The lease was for a term of five years commencing on July 31, 1967, and ending on July 30, 1972. The lease was for a restaurant, which was a part of a motel, owned by appellee. To the complaint, appellant filed three pleas. Plea one was the general issue. Plea two alleged termination of the lease by re-entry of appellee-lessor after abandonment of the leased property by appellant, and further that a clause in the lease provided for liquidated damages in the event of breach and that such stipulated sum as damage had already been paid. Plea three was by way of recoupment for the recovery of certain personal property alleged to be owned by appellant and located in the leased premises.

The case was tried by the court sitting without a jury and judgment was entered for the plaintiff-appellee in the amount of $1,375.00. Judgment was rendered against defendant-appellant on his plea of recoupment. Motion for new trial was denied and notice of appeal was filed on August 12, 1969.

Appellant has made four assignments of error. The first assignment is the denial of the motion for new trial. All of the grounds for the motion for a new trial, legally sufficient for consideration, were addressed to various findings of the court from the evidence. The total effect of the motion was that the judgment was contrary to the evidence. Assignments of error two and three were set out as grounds in the motion for a new trial. For the purpose of this appeal, we consider that, in fact, there are only two assignments of error for our consideration.

We shall consider first whether the judgment is contrary to the evidence.

Appellant and an associate, Joe Lopez, executed as lessees, a written lease with appellee as lessor, on the 21st day of July, 1967. The term of the lease was for five years with a monthly rental of $525.00. Possession of the leased premises was taken

August 1, 1967, and the sum of $1,050.00 was paid as rent to appellee shortly thereafter. This sum represented the first month's rent and the last month's rent if the lease ran full time. There was a provision in the lease, which we will discuss later in this opinion, in reference to assignment of error four, which provided that the sum of $525.00, upon the occurrence of certain conditions, would be considered as liquidated damages in the event the lease was breached by lessors and terminated prior to the full term.

There was evidence that the appellant never personally paid any rent to appellee, but that his partner Lopez paid rent through November 1967; that party by the name of Clements paid rent beginning in December 1967, and continued until April 1968; that one Mamie Townsand made rental payments to appellee from April 1968 until June 1968, and paid an additional $200.00 in June of 1968. The restaurant was not operated by anyone from June until October of 1968. At that time Clements came and changed the lock on the restaurant door and gave appellee one of the keys. Appellee was aware that the restaurant was not operating after June, and that he stated he talked to appellant in June about the rent being only partially paid and demanded payment. This contact and demand was denied by appellant.

The evidence of appellant was that he never personally operated the restaurant but that operation was begun by Lopez, who after a month or two of operation subleased the restaurant to Clements, who subsequently subleased to Mamie Townsand. He stated that he never personally contacted appellee and told him that he was subleasing or abandoning the lease, but that appellee knew that the restaurant had been subleased and subsequently abandoned because of his close proximity to it and his daily observance of its operation. Appellant stated that there was a sale of the stock and merchandise of the restaurant between Lopez and Clements, which agreement was in writing. Such writing was never produced at the trial, and there was no evidence that appellee had notice of such sale, had accepted Clements or Townsand as tenants, or had released appellant from the lease. Appellant contends that appellee, by accepting rent from persons other than appellant acknowledged abandonment of the lease by appellant, and terminated the lease by the acceptance of new tenants.

After hearing the evidence, the material parts of which we have set out above, the trial court, by its judgment, found that appellant had abandoned the written lease with appellee, but that appellee had not accepted the abandonment and terminated the lease. Since the lease had not been terminated at the time of filing suit on August 15, 1968, the court found that appellee was entitled to a judgment for the amount claimed in Count 2 of his complaint, that amount representing unpaid monthly rental from June through August 1, 1968, in the amount of $1375.00. After examining the record in this case, we hold that the findings and judgment of the court are not contrary to the evidence.

It is without dispute that appellant abandoned the leased premises. It is without dispute that he gave no written or oral notice to appellee that he was abandoning the lease. It is without dispute that appellee gave no written or oral notice to appellant that he was terminating the lease. It is only from the assumed knowledge of his abandonment by appellee and the fact that appellee accepted rental payments from someone other than appellant, that he contends his abandonment was accepted, and the lease terminated. The evidence that appellee went into the leased premises, inspected them and made some effort to find another tenant is insufficient evidence of re-entry and intention to terminate the lease.

It is clear from the brief of appellant that he is fully cognizant of the general rules of law applicable to cases of this nature. When a lessee abandons the leased premises or defaults in payment of

the rent, it is the option of the lessor to allow the premises to remain vacant and recover rent for the whole term, or to put an end to the lease by re-entry. Deming et al. v. Scoville, 220 Ala. 424, 125 So. 683; Locascio v. Barber, 17 Ala.App. 595, 87 So. 703. In the absence of an express termination of a lease by a lessor, whether a surrender or abandonment of the premises prior to the expiration of the term has been accepted and the lease terminated by the lessor, is basically a question of the intention of the parties and thus a question of fact for determination by the jury, or for the court trying the case without a jury. The lessor in attempting to re-let the premises after an abandonment; the acceptance of keys and their use for entering the premises to inspect or repair, does not establish that the lessor has accepted a surrender of the premises or otherwise released the lessee from liability for rents accruing under the lease. Cobb v. Lee, 44 Ala.App. 277, 207 So.2d 143; 51C C.J.S. Landlord and Tenant §§ 125(3)–125(8), 126.

From the evidence in this case it is unnecessary for us to indulge in the usual presumption of the correctness of the finding of the lower court sitting without a jury, in its finding of fact. We consider the evidence totally insufficient to establish termination of the lease or an intent to terminate.

The question next presented for our consideration is that involved in appellant's assignment of error No. 4. This assignment is that the trial court erred in not finding that the amount of damages due appellee was limited to that stipulated in the lease.

Included in the lease was the following provision:

"The lessees agree to pay to the lessors as rent for said premises $525.00 per month in advance at the beginning of each month. The lessees have heretofore paid to the lessors $1,050.00 rent for the first month of the term of this and for the last month of the term of this lease, provided that the lessees continue in said premises and keep and perform the terms and provisions of this lease during the entire term hereof, and provided, further, that *should the lessees make default in the performance of their obligations assumed by them in this lease and should this lease be terminated on account of such default*, $525.00 of the amount heretofore paid shall be retained by the lessors as liquidated damages for the breach of this agreement." (Emphasis ours.)

■ It was long ago decided in the courts of this state and most other states that the use of the terms "liquidated damages" and "penalty" in written contracts were not necessarily to be construed as meaning literally what they say. The most complete and clear discussion of the interpretation of these terms when found in a written contract were set out in the opinion of the Supreme Court of Alabama in the case of Keeble v. Keeble, 85 Ala. 552, 5 So. 149. The Court stated:

"The solution of this question is one which the courts have confessed embarrassment in determining. No one rule can be announced which will furnish a single test or criterion for all cases, but, in most cases, a multitude of considerations are to be regarded in seeking to reach the real intention of the parties. The following general rules may be deduced from the authorities, each having more or less weight, according to the peculiar circumstances of each case, and the nature of the contract sought to be construed."

■ After this statement the Court then proceeded to list ten general rules that had been sustained by the preponderance of judicial decisions up until that time. Some of those general rules were quoted as follows:

"1. The court will always seek to ascertain the true and real intention of the contracting parties, giving due weight to the language or words used in the con-

tract, but not always being absolutely controlled by them, when the enforcement of such contract operates with unconscionable hardship, or otherwise works an injustice.

"2. The mere denomination of the sum to be paid, as 'liquidated damages,' or as 'a penalty,' is not conclusive on the court as to its real character. Although designated as 'liquidated damages,' it may be construed as a penalty; and often, when called a 'penalty,' it may be held to be liquidated damages, where the intention to the contrary is plain.

"3. The courts are disposed to lean against any interpretation of a contract which will make it liquidated damages; and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty. * * *

"10. In applying these rules the controlling purpose of which is to ascertain the real intention of the parties, the court will consider the nature of the contract, the terms of the whole instrument, the consequences naturally resulting from a breach of its stipulations, and the peculiar circumstances surrounding the transaction; thus permitting each case to stand, as far as possible, on its own merits and peculiarities."

These rules quoted from Keeble v. Keeble, supra, are not only supported and sustained by the preponderance of judicial decisions prior to the date of that decision (1888), but have been fully sustained by the preponderance of decisions since that time. It is thus clear, that the meaning of the term "liquidated damages" as used in the lease introduced before the trial court,

was dependent upon the facts and circumstances peculiar to this case, and was thus a question of fact to be determined by the court from the evidence.

Though we have set out the general principles to be used in determining the meaning of the term "liquidated damages" as used in a particular contract when determination of such meaning is necessary, we find that the use of these general principles and the determination of the term "liquidated damages" is not necessary to the disposition of the appeal in the instant case.

[9] We reach this decision as a result of a close examination of the terms of the paragraph in which the words "liquidated damages" are used. An examination of the paragraph quoted hereinabove will quickly disclose that the involvement of "liquidated damages" is dependent upon the occurrence of two conditions. Those conditions are (a) default in performance of the lessee and (b) termination by lessor on account of such default. The trial court found, and we affirm, that the first condition, default by lessee in performance, did occur. It further found, and we affirm, that the second condition, termination by lessor on account of such default, did not occur. Thus, the failure of one of the conditions to occur, prohibits the invoking of this particular paragraph and makes it unnecessary for the disposition of the case to determine the intent of the parties when they used the term "liquidated damages." After full consideration of the issues raised on this appeal, we find no error in the judgment of the trial court and the same is hereby affirmed.

Affirmed.