From a judgment awarding $900 in damages by the trial court sitting without a jury, the lessee, Dr. Jarvis Ryals, takes this appeal.
Dr. Ryals, through able counsel, contends that the judgment of the trial court is due to be reversed in that (1) the parties to the lease by their conduct, cancelled the lease; (2) that the lessor failed to sublet the premises for the remainder of the lease; and (3) that, in this instance, by selling the premises prior to the expiration of the lease, Dr. Ryals (lessee) is not liable for a portion of the rent. We find no merit in the above and affirm.
The record indicates the following:
In 1974, Mr. Malcolm Laney, the lessor and appellee, was the owner of a house located at 1305 Dearing Place in Tuscaloosa, Alabama. Mrs. Elon Hamner represented Mr. Laney in real estate transactions over a period of years and handled the leasing of the house to Dr. Ryals.
The lease was executed between Mr. Laney and Dr. Ryals and ran from October 15, 1974, to October 15, 1975. It provided for monthly rental of $225 and also prohibited either the sublease or assignment by the tenant without the written consent of Mr. Laney.
Sometime in mid June, after making a rental payment covering the May 15 to June 15 period, Dr. Ryals and his family vacated the 1305 Dearing Place premises and moved into a newly built home. Dr. Ryals failed to inform Mr. Laney of the vacation of the premises, although he did turn in the house keys to Mrs. Hamner's real estate office.
It is at this point in the chain of events that controversy arises concerning what thereafter transpired. Dr. Ryals testified that conversations with Mrs. Hamner led him to believe that he could vacate the premises; that she would find a suitable tenant to occupy the premises for the remaining four months of the lease term; and that an offer by a responsible individual, Dr. Howard Barry Hannah, to lease the premises for the remainder of the lease term was refused by Mr. Laney through his agent, Mrs. Hamner.
Dr. Howard Barry Hannah testified that he attempted to rent the house for the remaining four months of Dr. Ryal's lease, with an option to buy to be exercised at that time.
Mrs. Hamner, on the other hand, testified that she told Dr. Ryals, prior to his vacation of the premises, that he could sublease the premises so long as the terms of the lease were carried out. She stated that rather than selling the house in October of 1974, as had previously been the intention of Mr. Laney, she had obtained his consent to rent the premises to Dr. Ryals. She was prompted to obtain Mr. Laney's consent to rent to Dr. Ryals by a plea from one of her personal friends, Dr. Jim Morris, to find a nice rental home for a new physician who was coming into town. Prior to Dr. Ryals' leaving 1305 Dearing Place in June of 1975, Mrs. Hamner told him that the house was to go up for sale in October of 1975 and that it might be difficult to find a tenant for only a four month period. She further testified that she never made any attempt to sublease the house, as it was to be sold upon termination of Dr. Ryals' lease. Additionally, she stated she explained to Dr. Hannah that he could move into the house under a lease which would contain an option to buy provision exercisable on or before October 15, 1976, but she never received any offer from him to execute such an agreement.
It is uncontroverted that Mr. Laney's house was eventually bought by Dr. Robert *Page 415 
G. Harris. The sale was closed on August 20, 1975; and Dr. Harris moved into the house on November 20, 1975. It is likewise clear that Dr. Ryals never attempted to obtain Mr. Laney's written consent to either a sublease or assignment of the lease.
Mr. Laney's complaint sought damages of $900 for unpaid rent accrued from June 15, 1975, through October 14, 1975; $300 for damages to the leased premises which occurred during Dr. Ryals' occupation as lessee; and $300 in attorney's fees. The transcript of evidence disclosed that the leased premises sustained $100 to $150 in damages prior to the time of Dr. Ryals' departure.
On March 24, 1976, the Circuit Court of Tuscaloosa County found the issues in favor of Mr. Laney and awarded damages of $900 plus costs.
At the outset, we note that where the trial court has heard testimony and seen the witnesses the decree is clothed with a presumption of correctness and will not be reversed on appeal unless shown to be clearly and palpably wrong. Pearson v.Fountain, 280 Ala. 1, 189 So.2d 551; Self v. Self, 49 Ala. App. 665, 275 So.2d 345. Moreover, the record on appeal must be construed most favorable to the successful party below. Stathemv. Ferrell, 267 Ala. 333, 101 So.2d 546.
 I
As noted above, Dr. Ryals contends that the evidence proves an agreement by the parties to cancel the lease. The testimony adduced at the trial fails to support that contention. Mrs. Hamner testified that Dr. Ryals could vacate the premises and find another tenant for the remaining four months of the lease, provided that he complied with its terms so that Mr. Laney would lose no rent. Her testimony indicates that Dr. Ryals could have sublet the house. However, the evidence fails to even suggest that Dr. Ryals sought to obtain written permission from the lessor to sublease, a mandatory requirement under the terms of lease between Dr. Ryals and Mr. Laney. Mrs. Hamner's testimony that Dr. Ryals could vacate 1305 Dearing Place so long as he complied with the terms of the lease fails to show an intent on the part of the lessor to cancel the lease. Neither does the acceptance of the keys by Mr. Laney's agent, standing alone, manifest an intent on the part of Mr. Laney to cancel the lease. McClure v. Daniel, 45 Ala. App. 558,233 So.2d 500; 49 Am.Jur.2d Landlord Tenant § 1100. We find insufficient evidence to find that the conduct of the parties cancelled the lease as a matter of law.
 II
Mrs. Hamner also testified that she never received a "bona fide offer" from Dr. Hannah to lease the house. This testimony disposes of Dr. Ryals' second argument — that Mr. Laney should not be awarded damages due to his refusal to sublease to a suitable tenant. There was no testimony whatsoever that Dr. Hannah contacted Mr. Laney. While the doctor did discuss with Mrs. Hamner the possibility of subleasing the premises for the remaining four months of the lease, her testimony indicates he made no offer to that effect. We need not decide the effect on an award of damages to a lessor occasioned by his alleged refusal to sublet to a responsible individual when the evidence discloses no such refusal. However, we do note that when the tenant abandons the leased premises prior to the expiration of the term agreed upon in the lease, "it is the option of the lessor to allow the premises to remain vacant and recover rent for the whole term, or to put an end to the lease by re-entry."McClure v. Daniel, 45 Ala. App. 558, 562, 233 So.2d 500, 502.Accord, Deming et al. v. Scoville, 220 Ala. 424, 125 So. 683;Schuisler Donnell v. Ames, 16 Ala. 73; Cobb v. Lee,44 Ala. App. 277, 207 So.2d 143. In other words, the lessor is under no duty to attempt to relet the vacated premises. However, acceptance of the abandonment by the lessor does terminate the tenant's liability for rent accruing thereafter.Deming, supra.
 III
As seen from the above, it is clear that Dr. Ryals is liable for rent from June *Page 416 
15 to August 20, 1975, the latter being the closing date for the sale of the house to Dr. Harris. If the closing date terminates Dr. Ryals' liability for rental payments, it is only because that event must be deemed an acceptance of the abandonment by the lessor. A sale of the abandoned leasehold may constitute evidence of acceptance of the abandonment. 49 Am.Jur.2d Landlord Tenant § 1101. However, the evidence as viewed in the most favorable light for Mr. Laney, the lessor-appellee, does not lead to that conclusion.
Whether the lessor accepts an abandonment of the premises by the lessee is a question of fact. McClure, supra. Here, Mrs. Hamner's testimony implies that the premises were available for Dr. Ryals' use until October 15, 1975. Moreover the purchaser, Dr. Harris, testified that he did not occupy 1305 Dearing Place until November 20, 1975. In short, the evidence fails to reveal that the sale of the premises was inconsistent with the terms of the lease agreement. Put another way, there is no showing that the buyer could have occupied the house prior to October 15. Hence, the evidence manifests no acceptance of Dr. Ryals' abandonment by Mr. Laney.
Therefore, sufficient evidence exists to substantiate trial court's award of $900 in damages. The judgment is therefore due to be and is ordered affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.