MOORE, Judge.
Dean Massey appeals from a judgment entered by the Mobile Circuit Court (“the trial court”) awarding Carriage Towne, LLC, damages for breach of contract and attorney’s fees. We affirm the judgment in part and reverse it in part.

Procedural History

On May 19, 2014, Carriage Towne filed a complaint against Massey asserting claims of breach of contract and conversion and *1239 seeking damages. With regard to the breaeh-of-eontract claim, Carriage Towne specifically alleged that Massey, the president of Lunch Box Subs and Smoothies, Inc. (“Lunch Box”), had signed a contract as a guarantor for Lunch Box to lease a certain commercial space owned by Carriage Towne (“the leased premises”). Carriage Towne further alleged that Lunch Box had failed to meet its obligations to pay rent under the lease contract. On June 19, 2014, Massey answered the complaint.
Following a nonjury trial, on November 12, 2015, the trial court, on December 11, 2015, entered a judgment stating, in pertinent part:
“Court having considered testimony, arguments, and motions of both parties, Court hereby finds in favor of [Carriage Towne] and against [Massey] on the Breach of Contract Claim and awards a judgment’ in the amount of $31,365.46 for unpaid rent, pre-judgment interest, and [Carriage Towne’s] attorney fee for the breach of contract claim.”[1]
On January 7, 2016, Massey filed a post-judgment motion arguing, in pertinent part, that the trial court had erred in holding him liable for damages for Lunch Box’s breach of the lease contract because, he asserted, Lunch Box had abandoned the leased premises and Carriage Towne had accepted that abandonment; he also argued that the trial court had erred in awarding Carriage'Towne attorney’s fees without evidence of the factors set forth in Peebles v. Miley, 439 So.2d 137 (Ala.1983). The trial court denied the postjudgment motion on January 8, 2016, and Massey filed his notice of appeal on February 18, 2016.

Discussion

i:
On appeal, Massey first argues that the trial court erred in holding him liable for damages for Lunch Box’s breach of the lease contract :and in denying bis postjudgment motion because, he. says, Lunch Box abandoned the leased premises and Carriage Towne accepted that abandonment. .
“When, before the end of the term of a lease, the tenant abandons the leased premises, the landlord, at his election, may either allow the property to remain vacant and sue on .the lease rental agreement for his rent, or. he may .reenter the premises thereby terminating the lease with the right to, sue for any breach of lease damages, accrued to the termination date. Rice v. Dudley, 65 Ala. 68 (1880); Ryals v. Laney[, 338 So.2d 413 (Ala.Civ.App.1976) ]; McClure v. Daniel, 45 Ala.App. 558, 233 So.2d 500 (1970). The second alternative, the. relinquishment of possession by the tenant and the resumption of possession by the landlord, operates, generally, as a surrender by operation of law; and, thereafter, both parties are released from liability on all lease requirements which are dependent, upon the continuance of the lease term and which have not become actionable by maturing before the acceptance by the landlord of the abandonment.
“Generally, the abandonment of released property by a tenant and the reentry thereon by the landlord ends the lease....
“Abandonment of the property by the lessees and acceptance of the abandonment by the lessor [are] questions of fact to be determined by the trier of facts....” :
*1240 International Tool & Eng’g Co. v. Sullivan, 389 So.2d 138, 139-40 (Ala.Civ.App.1980).
In the present case, Ronnie Johnson, the senior vice president in charge of commercial leasing for the Mitchell Company, testified that Carriage Towne had contracted with the Mitchell Company to find a tenant for the leased premises. He testified that he had brokered the lease contract that had been executed between ' Carriage Towne and Lunch Box and that Massey, who is the president of Lunch Box, had signed the lease contract as guarantor. According to Johnson, the lease contract was for a term of three years, commencing on June 1, 2011, and, pursuant to the lease contract, Lunch Box was to pay Carriage Towne rent of $2,400 per month. Johnson testified that, before the expiration of the lease contract, he had been informed that Lunch Box had vacated the leased premises. He testified that, subsequently, on August 21, 2013, he had met with Massey at the leased premises and that he had informed Massey that he would try to mitigate the damages by attempting to lease the property to another tenant and to release Massey from his guarantee obligation under the lease contract. According to Johnson, he had requested that Massey sign a document giving him permission to re-lease the leased premises, but, he said, Massey had refused to sign that document. Massey testified that he had relinquished his key to Johnson and that Johnson had informed him at that time that he had changed the locks on the doors to the leased premises.
Johnson testified that, after August 21, 2013, he had been unable to make further contact with Massey and that the leased premises had remained vacant. He testified that he had thereafter begun advertising the leased premises for rent by, among other methods, placing signs in the windows of the leased premises. Johnson testified that Lunch Box owed rent to Carriage Towne in the amount of $21,600 for the period spanning from September 2013 through May 2014.
In Newman v. Spann, 602 So.2d 901, 902-03 (Ala.Civ.App.1992), this court discussed whether a trial court had erred in determining that a lessor who had reentered the premises after a tenant had abandoned it and had attempted to release the premises by placing signs on the premises and advertising in the newspaper had accepted the abandoned premises, thereby forfeiting its right to collect rent from that point forward. This court quoted McClure v. Daniel, 45 Ala.App. 558, 561, 233 So.2d 500, 502 (Civ.App.1970), stating that “ ‘evidence that [a lessor] went into the leased premises, inspected them, and made some effort to find another tenant is insufficient evidence of re-entry and intention to terminate the lease.’” Id. at 902. In accordance with McClure, this court in Newman concluded that, based on similar conduct as had been present in McClure, “the lessor’s conduct alone is insufficient for this court to find that the lessor accepted the abandonment of the lessee.” Id.
Similarly, in the present case, the evidence indicated that Johnson, on behalf of Carriage Towne, had entered the leased premises and inspected it and had subsequently made efforts to find another tenant. In accordance with McClure and Newman, the trial court could have properly concluded that those actions were insufficient to support a finding that Carriage Towne had accepted Lunch Box’s abandonment of the leased premises. Therefore, we will not reverse the trial court’s judgment on this point.
II.
Massey next argues that the trial court failed to address the issue of attor- *1241 ne^s fees in detail and that there was no evidence presented regarding the relevant factors that the trial court must consider when awarding attorney’s fees.
The evidence at the trial established that the lease contract provided for the i’ecovery of “reasonable attorney’s fees plus costs” in the event of a breach of the lease contract. Johnson testified that Carriage Towne was obligated to pay its attorney one-third of any damages recovered under the lease contract. There was no other evidence presented with regard to attorney’s fees.
Carriage Towne filed a document setting forth its itemized statement of damages; those damages included $21,600 in unpaid rent, as well as $1,924.10 in prejudgment interest on the unpaid rent. The trial court’s judgment awarded Carriage Towne “$31,365.46 for unpaid rent, pre-judgment interest, and [Carriage Towne’s] attorney fee for the breach of contract claim.” It appears that the attorney’s fees awarded in this case were calculated by simply adding the amount of damages for unpaid rent ($21,600) to the amount of prejudgment interest awarded on the unpaid rent ($1,924.10) and then multiplying that sum by 1/3.
In Lolley v. Citizens Bank, 494 So.2d 19 (Ala.1986), the supreme court held that the trial court had erred in awarding the plaintiff attorney’s fees in the amount of 15% of the damages awarded when there had been no evidence presented indicating the reasonableness of the attorney’s fees based on the criteria set forth in Peebles v. Miley, 439 So.2d 137 (Ala.1983). Therefore, the supreme court “vacate[d] the judgment ... pertaining to attorney’s fees and instruct[ed] the trial court to conduct an evidentiary hearing for the determination of a reasonable attorney’s fee, in light of the guidelines set forth in Peebles v. Miley, ... and to set forth with some particularity the findings from the evidence adduced.” Lolley, 494 So.2d at 21. Similarly, in the present case, Johnson testified that Carriage Towne had a contract with its attorney pursuant to which the attorney would receive one-third of any damages awarded. The lease contract provides, however, that, in the event of a default in its obligation under the lease contract by Lunch Box, Lunch Box shall pay to Carriage Towne “reasonable attorney’s fees plus costs.”
We note that, in Carriage Towne’s brief to this court, it relies on the supreme court’s decision in Lanier v. Moore-Handley, Inc., 575 So.2d 83 (Ala.1991), which affirmed a judgment awarding attorney’s fees in the amount of 25% of the amount recovered. We conclude, however, that Lanier is distinguishable from the present case because, in Lanier, the trial court listed specific findings regarding the Pee-bles factors and noted that there was adequate evidence of the reasonableness of the amount of the attorney’s fees including the testimony of the attorney rendering the services as well as testimony of an independent attorney. There were no such findings made or evidence presented in the present case.
Because the attorney-fee award in the present case seems to be based strictly on a contingency-fee agreement and because no evidence was introduced regarding the reasonableness of the fees being sought, we reverse the trial court’s judgment to the extent that it awarded Carriage Towne attorney’s fees, and we remand this cause for the “trial court to conduct an evidentia-ry hearing for the determination of a reasonable attorney’s fee, in light of the guidelines set forth in Peebles v. Miley, ... and to set forth with some particularity the findings from the evidence adduced.” Lolley, 494 So.2d at 21.
*1242 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. The trial court also disposed of the conversion claim by ordering that certain property be returned to Carriage Towne; that claim is not at issue in this appeal.