283 So.2d 438

**PASQUALE FOOD COMPANY, INC.,**
a corporation,

v.

**L & H INTERNATIONAL AIRMOTIVE,
INC., a corporation.**

Civ. 115.

Court of Civil Appeals of Alabama.

July 18, 1973.

Rehearing Denied Aug. 15, 1973.

Beddow, Embry & Beddow and C. Lee Reeves, Birmingham, for appellee.

Macbeth Wagnon, Jr., Birmingham, for appellant.

**130**

HOLMES, Judge.

This is an appeal from a jury verdict and judgment thereon for plaintiff-appellee against defendant-appellant, Pasquale Food Company, Inc. Suit was brought below in a two count amended complaint. The basis for the suit was a claim for $10,000. Specifically, Count A is bottomed on a bank check in the amount of $10,000 issued by appellant, payable to appellee, on which payment was stopped. Count B of the complaint is based upon a provision of the contract (Aircraft Purchase Order) wherein there was a provision that if the purchaser, appellant, failed to accept delivery of the aircraft the seller-appellee could retain as liquidated damages the purchaser's deposit or down payment of $10,000.

To the complaint, appellant ultimately plead the general issue in short by consent with leave, etc., to Count A and the general issue to Count B. Additionally, the appellant filed some eight special pleas to Count B. We do not deem it necessary to this opinion to set out each of these pleas. However, Plea 3, to which the trial court sustained a demurrer, alleged that by virtue of a contemporaneous oral agreement the contract (Aircraft Purchase Order), signed by the parties, never became effective as a contract. Plea 9 alleged that the liquidated damages provision of the contract was void as a penalty because it was unreasonable in light of the actual harm caused by the alleged breach. The demurrer to this plea was overruled. Additionally, Plea 4A, to which a demurrer was interposed by appellee and overruled by the trial court, alleged a misrepresentation by the appellee concerning the condition of the aircraft in that the aircraft had been previously damaged, etc. Demurrers to the other pleas were sustained by the trial court.

As noted earlier, the jury returned a general verdict for the appellant in the amount of $10,000 and judgment was entered thereon. A timely motion for a new trial was made and overruled by the trial court, and thereafter, this appeal was taken.

The tendencies of the evidence reveal the following:

The plaintiff-appellee, a Fort Lauderdale, Florida, based corporation dealing in aircraft, and hereinafter referred to as L & H, had for sale an Aerostar aircraft, Model 600. This aircraft, as well as others in possession of L & H, was subject to a floor plan financing arrangement with a bank in Florida where L & H had a credit line at the time of $250,000. On September 19, 1970, Mr. Hauck, president and majority stockholder of L & H, received a telephone call from a Mr. Barnett, a representative of defendant-appellant, hereinafter referred to as Pasquale, and Mr. Andrews, president of Pasquale, concerning the purchase of an Aerostar aircraft.

Mr. Hauck advised Mr. Andrews by phone that he really needed to sell the said Aerostar Model 600 because of a circumstance existing regarding the floor plan arrangement at his bank that made it imperative for him to rotate his stock, and thus L & H was prepared to reduce the price of the aircraft immediately if a sale could be expected in order to meet the bank commitments. A sale price of $75,000 was stated to Mr. Andrews. The features of the aircraft were explained; the log books shown; and a ride taken in the aircraft (Mr. Barnett doing some piloting) and after landing, the aircraft was discussed and inspected further. The president of L & H stated that the aircraft had never been damaged; however, there had been a modification to the nose gear of the aircraft as per directions of the factory and this fact was noted in the log books.

Mr. Hauck testified that Mr. Andrews then agreed to take the aircraft on the condition that certain adjustments be made to the plane and, also, he wanted his pilot to go through the Aerostar factory training school and be checked out in the airplane. These adjustments and arrangements were to be made right away. Mr. Hauck agreed and on that occasion telephoned to set in motion the arrangements for the pilot to be put through the school at the first of the following week.

Mr. Hauck further testified that he and Mr. Andrews then entered into a written agreement, which was entered into evidence, and that Mr. Andrews gave a signed bank check for $10,000, which was also entered into evidence, as a deposit on the plane.

Pertinent clauses of the written contract (purchase order) pertaining to the issues involved in this appeal are as follows:

"Date Sept. 19, 1970.

"I, the undersigned Purchaser, hereby enter my order with L & H International Airmotive, Inc., hereinafter referred to as the Seller or Seller's Agent for the 'sale' aircraft as detailed below. . . .

"The Purchaser agrees that he has read and understand[s] the terms, conditions and limitations of liability set out on the reverse side hereof and that the same are included in and are a part of this Purchase Order all as if set forth on the face hereon, . . .

"PASQUALE FOOD CO. INC.

"NEAL L. ANDREWS, JR.
Purchaser's Signature

"AIRCRAFT PURCHASE ORDER TERMS AND CONDITIONS

"This Purchase Order when accepted by L & H International Airmotive, Inc., hereinafter referred to as the Seller or Seller's Agent becomes a binding contract of purchase and sale of the aircraft products shown on the face hereof, upon the terms and conditions there on set forth and upon the following terms and conditions:

"2.—Purchaser agrees that if he fails to accept the aircraft products as agreed when notified by Seller's Agent that the same are ready for delivery that the deposit made with this order shall be retained by Seller's Agent, not as a forfeiture but as liquidated damages for failure to fulfill this contract and thereupon Seller has the right to otherwise dispose of the said aircraft products with no further liability to Purchaser.

"6.—It is further agreed that this Purchase Order, when accepted by Seller's Agent, is the only contract controlling this sale and purchase, and that it contains all agreements, expressed or implied, either verbal or in

writing, and Purchaser acknowledges receipt of a copy of the same."

The aircraft was flown back to Fort Lauderdale and work was begun immediately on the requested adjustments, and was completed on Monday, September 21, 1970. Mr. Hauck attempted to reach Mr. Andrews but was unable to do so until Tuesday or Wednesday. Mr. Hauck testified that he talked to Mr. Andrews on Tuesday or Wednesday and that Mr. Andrews stated he was not interested in the aircraft as he had already purchased another one on September 21.

The check given by Mr. Andrews was placed with a bank in Fort Lauderdale for collection on September 21, 1970, and returned to that bank with collection advice. L & H sent the check back to get confirmation as to the reason it was not paid. The check was returned with the notation "Stop Payment" on it on October 1, 1970.

Mr. Andrews testified, over objection, that at the time he and Mr. Hauck signed the contract form and he signed the check, he had told Mr. Hauck that he was not ready to make a final decision and explained that he was not authorized to write checks on Pasquale by himself. Mr. Andrews testified that Mr. Hauck presented himself as a sales agent, not the owner of the company, and that Hauck stated he could not give a final commitment on whether the price they had discussed would be taken by L & H; that he would have to go back to his boss with something to show him to see if he could get the deal for Pasquale; that if Pasquale decided the next day to buy the aircraft, he, Hauck, needed money or something to show L & H so that they would let him bring the aircraft to Birmingham and consummate the deal. Mr. Andrews stated that therefore he was led into signing the purchase order and issuing the check on the basis of giving Hauck something to hold, and was trying to set it up so that if he decided the next day to buy the aircraft, Hauck would be able to bring it to Birmingham. Mr. An-

drews further testified, denying he talked to Hauck on the telephone the following Tuesday or Wednesday.

L & H renewed its objection to this testimony of Mr. Andrews and moved to exclude all the testimony relating to any alleged contemporaneous verbal agreement. The court granted the motion and instructed the jury accordingly.

The aircraft in question was sold on October 19, 1970, to a third party for $89,000. However, at the time of this sale L & H was in arrears in rotating its inventory under this floor plan and its line of credit and floor plan had been terminated by the bank. It was not until after the first of the year 1971 that L & H was able to obtain another floor plan and line of credit with a New Jersey bank, which line of credit was substantially less than L & H previously had with its Florida bank. Mr. Hauck testified that the loss of the floor plan and line of credit resulted in L & H having to change the method of sales, causing difficulties in operating the business and in considerably less business for L & H. There was no way to determine prior to the breach of contract how much less business L & H would do or how much money L & H would lose as a result of breach.

Pasquale, in its excellent brief, argues four assignments of error on this appeal. One assignment is predicated upon the trial court's exclusion of certain testimony elicited from the president of Pasquale, which testimony would have varied the terms of the written contract. The second argued assignment of error is that the trial court erred in sustaining L & H's demurrer to appellant's Plea 3. The next presented assignment of error relates to the sustaining of an objection to a question propounded by Pasquale to the president of L & H. The final argued assignment of error is based on the court's refusal to give Pasquale's requested charge which, in effect, stated that the liquidated damages provision of the contract was unenforceable be-

cause, in the circumstances shown by the evidence in this case, such liquidated damages were unreasonable as a matter of law.

■ With regard to the assignment predicated upon the exclusion of certain testimony of Mr. Andrews, the established general rule is that where a written contract exists between two parties, parol evidence cannot be received to explain, contradict, very, add to, or subtract from its terms. McGuffey's Nursing Home v. Taylor, 45 Ala.App. 634, 235 So.2d 885; Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348; Sou. Guaranty Ins. Co. v. Rhodes, 46 Ala.App. 454, 243 So.2d 717; McDowell v. Standard Oil Co., 49 Ala.App. 297, 271 So.2d 255.

The appellant contends that the parol evidence rule presupposes an action based on an existing valid contract, and if the issue is as to the validity or legality of the contract, the rule, by its very terms, has no application, and extrinsic evidence is admitted to determine that issue; that is, whether such evidence tends to establish the validity or invalidity of the contract in question. Such evidence does not vary or contradict the writing, but serves to establish that it has no force or efficacy.

Appellant contends this is a recognized exception to the parol evidence rule, and the appellant argues that the testimony of Andrews, summarized hereinbefore, falls within this exception and without the parol evidence rule, showing that no valid and effective contract ever existed as there were conditions precedent relating to the delivery or to the taking effect of the written instrument, to wit, the parties were to contact one another again and reaffirm it. Therefore, the exclusion of this testimony constituted error to reversal.

Appellant attempts to rely on the cases of McConnon & Co. v. Kirby, 211 Ala. 440, 100 So. 764, decided by the supreme court in 1924, and the case of White Sewing Machine Co. v. Saxon, 121 Ala. 399, 25 So. 784 (1898), to support his contention that the trial court erred to reversal in excluding certain parol testimony allegedly showing two conditions precedent, to wit, that the two instruments on which the plaintiff relied, the check and the written contract, were never delivered and never became effective as legal obligations.

However, these cases involved an entirely different question and may be distinguished in that the condition resting in parol involved a separate agreement from that which was included and a part of the bond itself, the parol was to the escrow agreement, separate and apart from the bond and thus admissible. This appears to be the meaning of the language quoted in McConnon v. Kirby, *supra*, by the Alabama Supreme Court, as follows:

"The stipulation in the bond before us makes no specific reference to conditions precedent. Taken as a whole, it rather implies conditions and limitations going to the effect of the bond as such when executed. It cannot be regarded as an escrow or agency agreement relating to delivery, nor as a waiver of the condition upon which the signatures of defendants were obtained." (211 Ala. at 442, 100 So. at 766)

Additionally, appellant relies upon Mask v. Evers, 30 Ala.App. 420, 7 So.2d 95, as authority for the admission of the testimony in question. However, we would point out that the language relied upon by appellant is dicta, and furthermore, the contract in the *Mask* case does not apparently evidence the intent of the parties as to the degree of the contract in question.

In any event, McConnon & Co. v. Kirby, *supra*; White Sewing Machine Co. v. Saxon, *supra*; and Mask v. Evers, *supra*, all must be read in light of more recent cases.

■ The question, as Judge Wright stated in Sou. Guaranty Ins. Co. v. Rhodes, *supra*, as to whether it was the intent of the parties that the written instrument embody all of the prior negotiations and represent the final jural act, or whether it represented only a part thereof and it was

intended there be an additional, collateral, and separate oral agreement, must be determined from the conduct and language of the parties.

■ The comparison is made with certain established tests applied to the oral agreement: (1) Is it in form a collateral one? (2) It must not contradict express or implied provisions of the written contract. (3) It must be one that parties would not ordinarily be expected to embody in the writing. Sou. Guaranty Ins. Co. v. Rhodes, *supra*.

■ The written contract (purchase order), which, presumably, is the final integration of the agreements of the parties, covers the gist of Pasquale's obligation. Likewise does the oral agreement sought to be introduced through Andrews' testimony; the oral condition was sought to be introduced as evidence to an unwritten fundamental assumption which formed the actual basis bargain between the parties to the transaction. The testimony was a contradiction of the plain language and integrity of the written contract. It is apparent from the quoted language of the written contract, set out earlier in this opinion, and the entire contract itself, that the parties specifically agreed that the written contract was effective and "binding" when it was accepted by Mr. Hauck on behalf of L & H. The contract, therefore, by its terms, spoke on the subject matter of when it was to become valid and enforceable. It provided for a condition precedent to its becoming effective. Were the contract entirely silent on the subject matter, it might well be said that a condition precedent of this character might be established without doing violence to the parol evidence rule.

■ Language in paragraph 6 also states that the written contract is the only contract, either verbal or written, controlling the sale and purchase of the Aerostar 600. We should not be understood as holding that paragraph 6 is conclusive of the matter in question, but only is a factor to be considered in determining whether the intent of the parties was that the written instrument embodied the final jural act.

Further, we do not believe that it can be contended that the parties would not ordinarily have expected to embody the alleged contingency in the writing.

As this court stated in Sou. Guaranty Ins. Co. v. Rhodes, *supra*:

■■ "The principle of the parol evidence rule is that if parties negotiate, either by parol or memoranda, the details of a contract, and integrate such negotiations into a single instrument, all other indicia of the negotiations on the subject are legally immaterial for the purpose of determining what are the terms of their act. This principle does not prohibit negotiation of more than one agreement at the same time, nor that one agreement may be reduced to writing and another be oral. If such agreements are clearly collateral, separate and distinct as to subject matter there is no problem presented. They are two separate contracts and are to be considered as such. The oral contract is admissible and enforceable, not as an exception to the parol evidence rule, but as a separate jural act. However, if from a consideration of the negotiations, acts, statements and surrounding circumstances, it appears that it was the intent of the parties that the ultimate written instrument would embody the whole of the transaction, and fully cover the subject of negotiation, there can be no collateral or separate oral agreement on the same subject." (46 Ala.App. at 459, 243 So.2d at 721)

Therefore, in this instance, under the parol evidence rule the testimony was subject to being excluded and we conclude that the trial court, after considering the contract as a whole and also considering the facts and circumstances surrounding the making of the contract, properly excluded the testimony of the alleged oral agreement.

Appellant next contends that the trial court erred to reversal in sustaining the appellee's demurrer to Plea 3 of Count B, which reads as follows:

"3. By virtue of a contemporaneous oral understanding between plaintiff and defendant the aircraft purchase order attached as an exhibit to the complaint never became a completed contract."

The record reveals that the trial court's actions were based upon its belief that the defensive matter sought to be presented by Plea 3 was available under the plea of the general issue.

Able counsel candidly admits that he has found no Alabama authority which clearly "holds" that the issue raised by Plea 3 was available to defendant under his plea of the general issue. However, Mask v. Evers, *supra*, indicates that this is the case. Other cases, to wit, McConnon & Co. v. Kirby, *supra*; and Knox v. Rivers Bros., 209 Ala. 308, 96 So. 241, stand for the proposition that it is not error to overrule demurrers to a special plea such as the plea in question, when there is a plea of the general issue.

From our understanding of Plea 3 set out herein above, we are of the opinion that the defensive matter sought to be presented by the plea was available under the plea of the general issue. Clearly, in this instance, a plea of the general issue *denies* allegations of each count of the complaint and requires proof of material allegations thereof. Sloss-Sheffield Steel & Iron Co. v. Allred, 32 Ala.App. 183, 25 So.2d 174, cert. den. 247 Ala. 499, 25 So.2d 179. We further understand Southern States Co. v. Long, 15 Ala.App. 286, 73 So. 148, as allowing the admission of evidence of a contemporaneous oral agreement under a plea of the general issue if it does not violate the parol evidence rule.

Any error in sustaining demurrers to Plea 3 is rendered harmless where a defendant has benefit of the same matter under the general issue. Padgett v. Gulfport Fertilizer Co., 11 Ala.App. 366, 66 So. 866; Supreme Court Rule 45.

We would further note that in this instance, since the apparent testimony regarding the substance of Plea 3 would have been violative of the parol evidence rule, as seen above, any error committed by the trial court in any event regarding the sustaining of the demurrer to Plea 3 would have been error without injury. Supreme Court Rule 45.

Appellant next contends that the trial court erred to reversal in sustaining appellee's objection interposed to the following question prepounded to the president of appellant corporation:

"In the course of this investigation, did you get any report that this particular aircraft had sustained some damage to the nose gear?"

Appellant argues, as he did in the lower court, that since the purpose of this question was not to show the fact of damage to the aircraft but to show appellant had received a report of damage, which report provided a sufficient reason for defendant's decision not to purchase, i. e., appellee had committed a fraud upon the appellant in not reporting such alleged damage.

While such testimony of prior damage may well have been introduced by other means, the hearsay character of the response to the above stated question cannot be escaped.

Hearsay testimony, unless it falls within what has been termed as some exception to the rule, when properly objected to, is not admissible. 9 Ala.Dig., Evidence, ☞314(1). Evidence has been defined as hearsay when its probative force depends on the competency and credibility of some person other than the witness. 31A C.J.S. Evidence § 192.

This court has thoroughly searched the case law of this state and we can discover no exception upon which this hearsay testi-

mony might properly have been admitted. To the contrary, "reports," such as the one in question, appear to be hearsay and we so hold in this instance that the trial court was not in error in sustaining the objection to the question. Southern Metal Treating Co. v. Goodner, 271 Ala. 510, 125 So.2d 268.

■ Appellant's final assignment of error is that the trial court erred to reversal in. refusing to give the appellant's following written requested charge:

"26. The court charges, you, ladies and gentlemen of the jury, that under the law that is applicable to this case, a provision for liquidated damages, such as that expressed in paragraph, 2 on the back-side of the aircraft purchase order which is in evidence in this case, is void as a penalty and may not be enforced if the amount of the liquidated damages provided therein is unreasonable in the light of the anticipated or actual harm caused by a breach of the contract, the difficulties of proof of loss and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. (Commercial Code Section 2–718) It is the duty of the court to determine whether the amount of liquidated damages so provided is reasonable or unreasonable in the light of those considerations. After considering the evidence in this case, the court has found and now instructs you, ladies and gentlemen of the jury, that the provision in the aircraft purchase order in evidence in this case which, if given effect according to its terms would liquidate damages to be recovered by the seller at $10,000, is unreasonable and void and such provision may not be enforced in this case. Therefore, if you should find from the evidence and under the instructions of the court that the plaintiff, L & H International Airmotive, Inc., is entitled to a recovery on the said aircraft purchase order then, in that event, the amount of your verdict should not exceed an amount which will reasonably compensate the plaintiff for such damages, if any, as plaintiff has actually sustained as a direct and proximate result of the failure of the defendant to accept delivery of the aircraft described therein and to pay the purchase price agreed therefor; and unless you are reasonably satisfied from the evidence that the plaintiff, L & H International Airmotive, Inc., has sustained some such actual loss or damage, then your verdict in this case must be in favor of the defendants."

Appellant bases the above charge on Tit. 7A, § 2–718, Code of Alabama 1940 (Alabama Commercial Code), which reads as follows:

"§ 2–718. Liquidation or limitation of damages; deposits.—(1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

The trial court, in its oral charge, instructed the members of the jury that they were to determine whether the stipulation as to the "down-payment" in the contract provided for liquidated damages or were unreasonable and therefore a penalty and void. We note that there was no objection to the court's oral charge, but to the contrary, both parties announced satisfaction.

The law in Alabama prior to the adoption of the above quoted section of the Alabama Commercial Code is that whether a stipulation in a contract is for liquidated damages or is for a penalty, i. e., unreasonable, is a question of law for the court and is not a question for the jury to determine. Yarbrough Realty v. Barar, 37 Ala.App. 342, 67 So.2d 853; Keeble v. Keeble, 85 Ala. 552, 5 So. 149; Stratton v. Fike, 166 Ala. 203, 51 So. 874; Henderson-Boyd Lumber Co. v. Cook, 149 Ala. 226, 42 So. 838.

■ The appellant's contention that the Alabama Commercial Code does not change the substantive law regarding liquidated damages as announced in Yarbrough Realty Co., *supra,* is, in this court's opinion, well founded and is correct. Specifically, this court does not believe that Alabama Commercial Code, § 2–718(1), as mentioned above, alters or changes the proposition of law that the reasonableness or enforceability of a provision for liquidated damages presents a question of law to be decided by the court. Yarbrough Realty Co., *supra.*

As Mr. Justice Harwood noted in Clinton Geohagan, Administrator of Estate of Barbara Geohagan Evans, Deceased v. General Motors Corp. and McDaniel Motor Co., 291 Ala. 167, 279 So.2d 436 (1973), the purpose of Alabama Commercial Code was to simplify, clarify, and modernize the law governing *commercial transactions,* etc.

■ It is therefore clear that the trial court was incorrect in this oral charge, but there was no objection to the charge, nor is this assigned as error, and, therefore, no reasonable error on this point is presented to this court. See 18A Ala.Dig., Trial, ☜☞273 and 284.

As seen from above, the error complained of is in the refusal to give appellant's requested charge No. 26.

The charge, if given, would be a determination as a matter of law that the liquidated damages were unreasonable or a penalty and, therefore, void. Our review of the record does not lead us to that conclusion and, therefore, the lower court, though incorrect in its oral charge, did not error to reversal in refusing the requested charge.

As this court's Presiding Judge Wright noted in McClure v. Daniel, 45 Ala.App. 558, 562, 233 So.2d 500, 503:

"It was long ago decided in the courts of this state and most other states that the use of the terms 'liquidated damages' and 'penalty' in written contracts were not necessarily to be construed as meaning literally what they say. The most complete and clear discussion of the interpretation of these terms when found in a written contract were set out in the opinion of the Supreme Court of Alabama in the case of Keeble v. Keeble, 85 Ala. 552, 5 So. 149. The Court stated:

" 'The solution of this question is one which the courts have confessed embarrassment in determining. No one rule can be announced which will furnish a single test or criterion for all cases, but in most cases, a multitude of considerations are to be regarded in seeking to reach the real intention of the parties. The following general rules may be deduced from the authorities, each having more or less weight, according to the peculiar circumstances of each case, and the nature of the contract sought to be construed.' "

As this court further noted in *McClure, supra,* in quoting *Keeble, supra,* there appears to be ten general rules regarding the question of liquidated damages versus penalty. We will not set out all of these general rules, but Note 10, 45 Ala.App. page 563, 233 So.2d page 504, of *McClure,* reads:

" '10. In applying these rules the controlling purpose of which is to ascertain the real intention of the parties, the court will consider the nature of the contract, the terms of the whole instrument, the consequences naturally resulting from a breach of its stipulations, and the peculiar circumstances surrounding the transaction; thus permitting each case to stand, as far as possible, on its own merits and peculiarities.' "

Considering the nature of the contract; the type of the item to be sold; the testimony concerning the appellee's financial condition at the time of the purported sale; and the possible consequences naturally resulting from the breach of the contract's stipulations, we do not find that the liqui-

dated damages in this instance are unreasonable or void as a penalty.

As Mr. Justice Somerville stated in Keeble v. Keeble, *supra*, "Courts are under no obligations, nor have they the power, to make a wiser or better contract for either of the parties than he may be supposed to have made for himself."

We further see no inconsistency in § 2–718 of the Alabama Commercial Code and the cases cited herein.

We further note that the charge can be said to be in improper form in that it states, " . . . *your verdict in this case must be in favor of the defendants*", rather than the proper form directing that, "You cannot find for the plaintiff." See Bob White Chevrolet, Inc. v. Hayles, 44 Ala.App. 411, 211 So.2d 157; 18A Ala. Dig., Trial, ☞261.

Finding no reversible error, the case is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.