0135

Jeremy G. WILSON and Walter Lee McRacken, doing business under the name and style of Chester Street Associates, Respondents, v. Mary Ann LANDSTROM, Appellant.

(315 S. E. (2d) 130)

Court of Appeals

*Robert J. Thomas* and *Daniel T. Brailsford*, Columbia, *for appellant.*

*Deena Smith-McRackan*, Columbia, *for respondents.*

March 26, 1984.

BELL, Judge:

This is an action in equity by purchasers of real estate to clear title. The plaintiffs, Jeremy G. Wilson and Walter Lee McRacken, doing business as Chester Street Associates, prayed for a declaration that Mary Ann Landstrom had conveyed to them all of her interest in the premises at 62 Downing Street in the City of Columbia. Landstrom, the defendant and seller, counterclaimed for payment of the balance of the purchase price plus interest or rescission and restitution. The circuit court decreed that Chester Street Associates owns the property in fee simple, subject to a mortgage held by Landstrom and that Landstrom is barred from asserting any interest in the property except to the extent of her mortgage. Relief on the counterclaim was denied. Landstrom appeals. We affirm.

The facts are substantially undisputed. In July, 1979, Landstrom, who had moved from South Carolina in 1967 and now lives in California, listed her house at 62 Downing Street in Columbia with a local real estate broker. In the listing agreement Landstrom reserved the right to sell the house to the tenants then occupying it. For this purpose she contacted Harry Dent, her former employer in South Carolina. Dent agreed to negotiate with the tenants on her behalf. Pursuant to this arrangement, Landstrom executed a power of attorney authorizing Dent to sell the house "upon such terms and conditions as he may see fit." The power of attorney was witnessed but not probated.

Landstrom's tenants decided not to purchase the house. However, the realtor obtained Chester Street Associates as a prospective purchaser. The realtor called Landstrom to inform her of Chester Street Associates' offer on the house. After discussing the matter by telephone with Dent, Landstrom authorized him to sign a contract of sale prepared by the realtor.

On September 17, 1979, Dent executed a contract to sell the house to Chester Street Associates. The contract provided for

a purchase price of $33,000 with $500 to be paid as earnest money and $22,000 to be paid upon delivery of a deed. The following financing term was also contained in the contract:

> Seller agrees to accept second mortgage at 8% for five years with ballon [sic] payment payable on October 1, 1984, in amount of $10,500.00.

After the contract was signed by Dent it was forwarded to Landstrom. Closing was held on October 1, 1979. Dent delivered a deed to Chester Street Associates and received in return a document entitled "Second Mortgage" which included the following provision:

> This is a second mortgage and shall be subject and subordinate to any first mortgage that Mortgagor may now have or subsequently execute.

No other mortgage was placed on the property at the time of closing.

When Landstrom received the closing papers she consulted an attorney in California about the mortgage. After learning that her mortgage might be subordinated to a future mortgage placed on the property, she became concerned about the sufficiency of her security. She then destroyed the original power of attorney, refusing to have it probated so Chester Street Associates could record it. This action followed.

At a reference before the master in equity, Landstrom presented no testimony except her own deposition. The master recommended an order confirming Chester Street Associates' title. He found no evidence that Chester Street Associates acted in bad faith, a finding to which Landstrom took no exception. With minor exceptions the circuit court adopted the master's findings of fact and conclusions of law. The court entered its order confirming title in Chester Street Associates and barring any claim of Landstrom except to the extent of her "second mortgage."

Landstrom's appeal raises three questions for our review: (1) did the delivery of the so-called "second mortgage" constitute a breach of contract by Chester Street Associates; (2) did Dent have authority, actual or apparent, to accept the "second mortgage" on Landstrom's behalf and to deliver her deed in exchange for it; and (3) are Chester Street Associates barred from relief by the doctrine of "unclean hands."

## I.

If Dent was acting within the scope of his authority when he accepted the "second mortgage" at closing, it seems clear Landstrom can claim no breach of contract. The deed and mortgage delivered and accepted at closing, not the prior contract, represented the final bargain of the parties. Having accepted the mortgage through her attorney, Landstrom cannot now rely on the terms of a prior executory contract as to the mortgage. The applicable rule has been fully expounded by our Supreme Court in the case of *Charleston & Western Carolina Railway Co. v. Joyce*, 231 S. C. 493, 99 S. E. (2d) 187 (1957):

> The doctrine of merger is founded upon the privilege, which parties always possess, of changing their contract obligations by further agreements prior to performance. The execution, delivery, and acceptance of a deed varying from the terms of the antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed. [Citations omitted.] * * * *
> Where there is no mistake or fraud a deed executed subsequently to the making of an executory contract for the sale of land is generally regarded as conclusive evidence of a previous modification of the executory contract. A deed executed subsequent to the making of an executory contract for the sale of land supersedes that contract. . . .

231 S. C. at 504-505, 99 S. E. (2d) at 193 (quoting with approval from *Snyder v. Roberts*, 45 Wash. (2d) 865, 278 P. (2d) 348 (1955), and from 55 Am. Jur., Vendor and Purchaser, Para. 327).

The same rule applies to mortgages. *Jordan v. Flynt*, 240 Ga. 359, 240 S. E. (2d) 858 (1977) (plurality opinion); *Norment v. Turley*, 24 N. M. 526, 174 P. 999 (1918); *Timms v. Shannon*, 19 Md. 296 (1862).

In this case Dent accepted the "second mortgage" as Landstrom's attorney in fact. Landstrom makes no claim that Dent, a lawyer, was mistaken or deceived as to its contents. The mortgage would be binding on Landstrom if she personally had accepted it at closing. In principle the

result is the same whether Landstrom was acting through an attorney or in person. To prevail on her claim, Landstrom must show not that the terms of the mortgage differed from those of the contract, but that Dent had no authority to accept the mortgage as tendered.

## II.

This leads to Landstrom's second argument: that there was no effective delivery of the deed and mortgage because Dent had no actual or apparent authority to accept the mortgage. Her contention is refuted by the terms of the power of attorney, which states, in pertinent part:

> ... I, Mary Ann Landstrom, ... appoint Harry S. Dent, my true and lawful attorney with full power and authority:
>
> 1. To bargain, sell, convey and deliver to whomever he may see fit, upon such terms and conditions as he may see fit, my home place located at 62 Downing Street, Columbia, South Carolina, and in general to take any action whatsoever in regard to said property which I myself could take; and

* * * * * *

> 5. I do hereby expressly declare that the powers herein granted to aforesaid attorney shall not be construed as limited to those matters hereinabove specifically set forth but rather shall be construed to broadly include and embrace full and unlimited power and authority to do and perform on my behalf and in my place and stead and with equal validity any and all lawful acts or things which I could do if personally present, hereby ratifying and confirming whatsoever my said attorney shall do and may do, by virtue hereof, concerning the sale and transfer of my property located at 62 Downing Street, Columbia, South Carolina.

Landstrom concedes the power of Attorney was broad. She argues, however, that as long as Chester Street Associates "were not acting in good faith they had no right to rely upon his [Dent's] authority, regardless of the breadth of the terms of the Power of Attorney." In support of this position, Landstrom cites a section of Corpus Juris Secundum standing for

the proposition that a third party may be liable to a principal for participating in the fraud of his agent. *See,* 3 C.J.S., *Agency* § 456 (1973). Since Landstron neither alleged nor proved fraud on the part of Dent or Chester Street Associates, this argument does not avail her. Her suggestion that Chester Street Associates were not acting in good faith is likewise untenable in view of the finding of both the master and the circuit judge that there was no bad faith involved.

The dissenting opinion seeks to circumvent this problem by fashioning a different theory for disregarding Dent's broad authority under the power of attorney. The dissent concludes Dent had no authority to accept a modification of the mortgage terms because the contract of sale contained a standard form merger clause stating ". . . there is no other agreement, oral or otherwise, modifying the terms hereunder." Reliance on this language is misplaced.

A merger clause expresses the intention of the parties to treat the writing as a complete integration of their agreement. *Pasquale Food Co., Inc. v. L & H Airmotive, Inc.,* 51 Ala. App. 127, 283 So. (2d) 438 (1973), *cert. denied,* 291 Ala. 795, 283 So. (2d) 448 (1973); 4 Williston On Contracts § 633 (3rd ed. 1961). The terms of a completely integrated agreement cannot be varied or contradicted by parol evidence of prior or contemporaneous agreements not included in the writing. *Armour Fertilizer Works v. Hyman,* 120 S. C. 375, 113 S. E. 330 (1922); *M'Dowall v. Beckly,* 9 S.C.L. (2 Mill) 265 (1818). It is well settled, however, that this rule does not apply to subsequent modifications of the agreement. *Koth v. County Board of Education of Jasper County,* 141 S. C. 448, 140 S. E. 99 (1927). An integrated agreement may always be modified. In this case the mortgage was *subsequent* to the contract and, therefore, was not affected by the merger clause.

### III.

Finally, Landstrom raises the defense of "unclean hands." The doctrine of "unclean hands" precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant. *Arnold v. City of Spartanburg,* 201 S. C. 523, 23 S. E. (2d) 735 (1943). In this case two judges found there was no bad faith or inequitable conduct by Chester Street Associ-

ates. We are bound by that finding given the lack of clear evidence in the record to the contrary. *Ex parte Guaranty Bank and Trust Co.*, 255 S. C. 106, 177 S. E. (2d) 358 (1970).

Furthermore, it is difficult to see how Landstrom has been prejudiced. The record reveals that Chester Street Associates have given no other mortgage on the property. Thus, regardless of the language of the sales contract or the "second mortgage," Landstrom holds the only mortgage on the premises. Her security interest is not threatened by another existing mortgage. Moreover, there is nothing in the record proving her security interest will be destroyed in the future. Indeed, although we do not decide the issue in this case, it is not at all clear that a valid subordination agreement exists between Landstrom and the purchasers. *See, e.g., Handy v. Gordon*, 65 Cal. (2d) 578, 55 Cal. Rptr. 769, 422 P. (2d) 329 (1967). Conceivably, as events actually transpired, she is in a better position with respect to her security than she would have been under the terms of the contract. Since prejudice to the defendant is a necessary element of the "unclean hands" defense, the doctrine cannot bar relief on the facts before us.

For the reasons stated, the judgment of the circuit court is

Affirmed.

SANDERS, C. J., concurs.

GARDNER, J., dissents.

GARDNER, Judge, dissenting:

My brethren of the majority opinion misconstrue the simple issues made by the pleadings of this case and the major issue raised by this appeal.

The major issue of this appeal is Mrs. Landstrom's contention that there was a breach of *the* contract of sale between her and Chester Street Associates (CSA), upon which CSA sued.

The majority opinion confuses the law of merger, which presupposes a novation to an earlier contract, with the issue presented by CSA's complaint, i.e., the enforcement of a specific contract incorporated in the complaint. CSA asks this court to enforce one contract and the majority opinion as-

sumes the authority to enforce another supposed contract in support of CSA's case.[1]

CSA's complaint alleges that (1) in reliance on the power of attorney, CSA and Dent, as attorney in fact for Mrs. Landstrom, entered into a contract of sale for the subject property, (2) the contract is incorporated in the complaint, (3) CSA has performed all of its duties pursuant to the contract, and (4) pursuant to said contract Dent executed the deed to CSA. The complaint then prays that CSA be vested with fee simple title. Mrs. Landstrom denied allegations 3 and 4 and alleged breach of contract because of the terms of the mortgage delivered to Dent.

The contract provided that Mrs. Landstrom was to receive a second mortgage as part of the purchase price. The mortgage delivered to Dent contained a blanket subordination agreement ("this is a second mortgage and shall be subject to and subordinate to any first mortgage that mortgagor (sic) may now have or subsequently execute"). I would hold that the blanket subordination agreement violates the terms of the contract, which made no mention of a subordination agreement. *CSA failed to prove it had performed all of its duties under the contract* and, to the contrary, affirmatively proved it had not performed its contractual duties because the mortgage it delivered is inconsonant with the contract. CSA disproved its own case and established Mrs. Landstrom's defense of breach of contract.

I would observe, also, that the mortgage Mrs. Landstrom was to receive was to be a purchase money mortgage. Mrs. Landstrom, under the contract, is entitled to a second mortgage with all of the incidences of a purchase money mortgage. A major incident of a purchase money mortgage is that the mortgagor (CSA in this case) can do nothing in derogation of the lien of the purchase money mortgage. *Crystal Ice Co. of Columbia v. First Colonial,* 273 S. C. 306, 257 S. E. (2d) 496 (1979). The blanket subordinate agreement is, for this reason, inconsonant with the contract. For this additional reason, I would hold that the delivery of the mortgage containing the blanket subordination agreement constitutes a breach of contract and also a failure of CSA to establish its case.

---

[1] See First paragraph, section 1, majority opinion.

Of more significance, CSA alleges that the deed was delivered to Mrs. Landstrom *pursuant to said contract.* How, now, can the majority opinion hold that the closing of the transaction was pursuant to a new contract created by the law of merger? Mrs. Landstrom denied that the transaction was closed pursuant to the contract sued on by CSA and alleged CSA breached the contract. I would hold there is an obvious breach of contract. This court simply should not disregard the pleadings by "reaching up into the sky" to find a totally new contract to enforce.

Had CSA not premised its entire case on the enforcement of the contract and failed to prove its case, the majority opinion would be more understandable, but still, I think, without merit. I would, contra to the majority opinion, hold that Dent had no authority to accept the mortgage delivered. The parties agreed by the contract that Dent's powers thereafter were limited to a conformance with the contract. The majority opinion cites no pertinent authority that a power once limited[2] can be revested with its original power except by the donor (Mrs. Landstrom). Such a proposition does, indeed, defy all reason and logic.

The majority opinion disregards the purposes of pleading and procedure. Chaos must result from decision making laid in any purpose other than a response to the issues made by the case. Aside from this simple observation, the writer, as a judge of equity, would observe that an injustice has been done to Mrs. Landstrom. The high calling of equity is to strive for the very zenith of justice; in this calling, I submit, we miss the mark by permitting the appealed order to stand.

I would reverse and remand with direction that judgment be entered for Mrs. Landstrom without prejudice to CSA's right to establish their fee simple title to the subject property by the execution and delivery of a mortgage to the contract they sued on or by simply agreeing that the blanket subordination agreement in the present mortgage be deleted.

---

[2] The contract provides that (1) it was the only agreement between the parties, (2) Dent and CSA were bound by it, and (3) it could be enforced by an action for specific performance.