1680

Billy L. LINGEFELT and Ethel Lingefelt, Respondents v. FOREST HILLS HOMES, INC., and Heide Davis, Appellants.

(406 S.E. (2d) 394)

Court of Appeals

*Bruce A. Byrholdt* of *Chapman, King & Byrholdt,* Anderson, *for appellants.*

*Hal Warlick,* Easley, *for respondents.*

Heard May 15, 1991.

Decided July 8, 1991.

*Per Curiam:*

Respondents, Billy L. and Ethel Lingefelt, sued appellants, Forest Hills Homes, Inc.[1] and Heide Davis, for breach of contract for the sale of a mobile home. A jury awarded the Linge-

---

[1] Heide Davis testified he and his father were the sole owners and officers of the corporation.

felts damages of $25,500. The appellants (sellers) appeal the admission of certain testimony. We affirm.

The issues raised in this appeal are whether the trial court erred in allowing testimony of (1) negotiations between the parties which varied the terms of a written contract, (2) costs and expenses the Lingefelts incurred prior to the date of the written contract, and (3) claims of misconduct concerning the sellers and other individuals not parties to this action.

This being an action at law tried by a jury, this court may neither weigh the evidence nor determine its preponderance. We may only determine if there is any evidence that reasonably supports the jury's findings. The admission of testimony is ordinarily within the court's discretion. *Hanna v. Palmetto Homes Inc.*, 300 S.C. 535, 389 S.E. (2d) 164 (Ct. App. 1990); *Welch v. Whitaker*, 282 S.C. 251, 317 S.E. (2d) 758 (Ct. App. 1984).

On appeal from a jury verdict, the evidence and all inferences reasonably deducible therefrom must be viewed in light most favorable to the party for whom the verdict was returned. *McPeters v. Yeargin Constr. Co., Inc.*, 290 S.C. 327, 350 S.E. (2d) 208 (Ct. App. 1986). Around September 1988, sellers and the Lingefelts reached an oral agreement whereby the sellers sold the Lingefelts a mobile home and other improvements. The Lingefelts were to move out of their old mobile home on October 12, 1988. The closing on the new mobile home would take place at the time they moved into it some three days later.

The Lingefelts moved out on October 12, 1988, but were unable to move into the new mobile home until on or about November 20, 1988. Sellers moved the old mobile home off the Lingefelts' lot and resold it applying the proceeds to the down payment on the new home.

The Lingefelts testified to numerous defects in the new mobile home. In January 1989, Davis submitted a written contract to the Lingefelts to sign. They refused to sign the contract because much of the additional set-up work and improvements had not been completed, or were defectively completed. Thereafter, the Lingefelts went to their lawyer. He drafted an addendum to the written contract which provided that the sellers would complete all work by March 5, 1989, the date the Lingefelts were to make their first payment on the

mobile home. The Lingefelts were instructed by their lawyer to staple the addendum to the written contract which was to be presented to a finance company. Davis refused to attach the addendum to the contract, but assured the Lingefelts he would perform the work covered by the addendum.

In April 1989, the Lingefelts instructed the sellers not to come on the property anymore. They eventually got someone else to do some of the work. At time of trial much of the set-up work and improvements the Lingefelts claim was covered by the parol agreement remained incomplete or was defectively completed. The Lingefelts described the defects as follows: "It was such a mess that we had to put up signs not to go in, that it was dangerous."

## MERGER CLAUSE

The written contract contained the following language:

> This agreement contains the entire understanding between us and no other representation, verbal or written, has been made which is not set forth herein.

Based upon the merger clause, the sellers objected to all testimony regarding any work or improvements that were not encompassed in the written contract. The trial court ruled the testimony admissible, stating: "I'm going to let both sides testify to the preliminaries before they got there, and then you can go by the written contract." The Lingefelts then proceeded to testify to negotiations and expenses incurred by them that took place prior to execution of the January 1989 written contract. The Lingefelts specifically testified the sellers agreed to provide all items listed on a salesman's worksheet. Sellers argue this evidence allowed the jury to award damages outside the scope of the contract between the parties.

"When an agreement is reduced to writing, there is a strong implication the whole intention of the parties has been expressed and there is no agreement or intention contrary to that expressed." *Palmetto State Sav. Bank of S.C. v. Barr*, 293 S.C. 252, 254, 359 S.E. (2d) 531, 532 (Ct. App. 1987). When a written agreement is clear and complete, extrinsic evidence of agreements or understandings contemporaneous with or prior to the execution of a written instrument may not be used to contradict, explain, or vary the terms of

the written instrument. *Iseman v. Hobbs*, 290 S.C. 482, 351 S.E. (2d) 351 (Ct. App. 1986); see *Wilson v. Landstrom*, 281 S.C. 260, 315 S.E. (2d) 130 (Ct. App. 1984) (completely integrated agreement). However, the doctrine of merger is inapplicable to a consistent parol agreement that was not intended to be merged into the written agreement. *Rentco., a Div. of Fruehauf Corp. v. Tamway Corp.*, 283 S.C. 265, 321 S.E. (2d) 199 (Ct. App. 1984).

In the present case, the jury had the duty of deciding what constituted the contract of the parties. There is evidence the parties entered into a parol contract long before the written contract was signed. There is also evidence the parol agreement was partly performed prior to the execution of the January 1989 written contract. A review of the January 1989 agreement reflects it relates to the financing of the mobile home. It does not mention the agreement of the parties regarding the set up of the mobile home and other improvements. Therefore, there is evidence the January 1989 written contract was prepared by sellers primarily for financing purposes. A financing agreement would be consistent with a parol agreement to set-up and improve the trailer. The jury could have concluded from the evidence that the controlling agreement regarding the set up of the mobile home was the parol agreement entered into in September or October 1988. See *Ray v. S.C. Nat'l Bank, Inc.*, 281 S.C. 170, 314 S.E. (2d) 359 (Ct. App. 1984) (parol evidence is competent to show an independent agreement so long as the oral agreement does not contradict or vary the written one). We therefore find no error in the admission of testimony regarding the terms of the parol contract to set-up and improve the trailer.

The sellers next argue the trial judge erred in allowing testimony of costs and expenses incurred by the Lingefelts prior to the date of the January 1989 written contract. We disagree. Having concluded the jury could have found the parol agreement controlling, there was no error in admitting evidence of damages resulting from a breach of the parol agreement.

## COMPLAINTS OF PERSONS NOT
## PARTIES TO THIS SUIT

Finally, the sellers argue it was error for the trial judge to permit testimony of complaints by third persons against the sellers. We find no reversible error. During trial, sellers objected to questions relating to complaints by third parties against them. The trial judge ruled that if the questions related to whether or not Mr. Davis had his license revoked he would permit the testimony. Attorney for the sellers responded that he had no objection to testimony relative to that subject. Whereupon, Davis was asked whether or not complaints from three individuals caused his license to be revoked. He denied the complaints had anything to do with the revocation of his license. At that point, the following exchange took place between the Lingefelts' attorney and Davis:

Q: What happened to Ms. Carroll's home?
Ms. Carroll, stand up.

BRYHOLDT:
Your Honor, he's going into particulars and I would object on the relevancy grounds. Whatever happened between he and Ms. Carroll have nothing to do with the Lingefelts.

Q: Your Honor, this is extremely relevant because there was a pattern. . . .

COURT:
Let's don't argue in front of the jury.

A: All right, sir. I don't mind answering the question.

COURT:
Okay, that solves the problem.

We hold the sellers effectively waived their right to object to the testimony when Davis voluntarily agreed to answer questions regarding specific complaints.

Accordingly, the order of the trial judge is affirmed.

Affirmed.