[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 25 
Sylvia Friedman and Joseph Friedman, the plaintiffs in a detinue and conversion action in the Etowah Circuit Court, appeal from a judgment entered in favor of the defendant, Vivian K. Friedman, after a trial at which evidence was presented ore tenus. We affirm.
 I. Background
Vivian Friedman was married to Dr. Howard Friedman, Sylvia and Joseph Friedman's son. Howard and Vivian owned a house in Jefferson County, as well as a house in Rainbow City in Etowah County. Howard, an anesthesiologist in Gadsden, would stay at the Rainbow City house when he worked late or was on call at the hospital. Sylvia and Joseph lived in New York.
On February 8, 1996, Howard purchased an American Security Products Company ("AMSEC") brand safe from Byrd Lock and Key and placed it in the basement of the Rainbow City house. In this safe Howard kept his collection of firearms, as well as personal documents. On or about October 18, 1996, Joseph purchased a Mosler brand safe from Byrd Lock and Key and placed it in the basement of Howard and Vivian's Rainbow City house. Sylvia and Joseph named Howard as the executor of their respective estates, and Joseph purchased the safe to store their wills, as well as other estate-planning documents and placed it in Howard and Vivian's Rainbow City house to allow Howard access to these documents. Joseph and Sylvia gave Howard the combination for the safe.
On or about March 27, 1997, Sylvia and Joseph drove from their house in New York to Birmingham to attend the bar mitzvah of Howard and Vivian's son. According to Sylvia, she brought several items of expensive jewelry with her from New York to wear to the various functions associated with the bar mitzvah. On Sunday, March 30, 1997, Sylvia and Joseph drove from Birmingham to Howard and Vivian's house in Rainbow City, where they stayed Sunday and Monday. Sylvia claims that while she was there she placed *Page 26 
her jewelry in manila folders and placed the folders in the Mosler safe. Specifically, Sylvia says she placed in the safe an emerald ring worth $173,088, a Concord brand gold watch worth $2,700, a pendant worth $7,300, a pair of earrings worth $4,675, and a set of five rings that had belonged to Sylvia's mother. Sylvia also placed in the safe three sheets of 1948 Israeli stamps worth $83,000. The stamps had belonged to Sylvia's father, who died in 1977, and her brother had given them to her at the bar mitzvah. Howard testified that he witnessed his parents placing these items in the Mosler safe.
On Tuesday, April 1, 1997, Sylvia and Joseph left Rainbow City for a trip to Atlanta. Their plan was to return to Rainbow City after a few days, retrieve the jewelry and stamps, and return to New York. However, while they were in Atlanta, their youngest son, an orthodontist who shares a practice with Joseph, telephoned complaining of chest pains and asked Joseph to return to New York to help with the practice. Sylvia and Joseph drove directly from Atlanta to New York without returning to Rainbow City to retrieve the jewelry and stamps they had placed in the Mosler safe.
In June 1997, Howard and Vivian were experiencing marital problems. Vivian consulted an attorney, who advised her to locate documents relating to all marital property. Vivian was unable to locate many documents relating to the marital property and presumed that they were at the Rainbow City house. On June 5, 1997, while Howard was on a rafting trip in Colorado with two of the couple's sons, Vivian went to the Rainbow City house, where she found the two safes. Vivian testified that she had never seen the safes and that she did not know that one of the safes belonged to Sylvia and Joseph. In fact, the only safe she had been aware was located in the Rainbow City house was Howard's AMSEC gun safe. Vivian contacted Ronald Jewell, a locksmith in Birmingham, and asked him to meet her at the Rainbow City house on June 6. Jewell testified that Vivian told him that the safes had been damaged when the basement flooded and that they could not be opened. Jewell met Vivian at the Rainbow City house and opened the safes for her. The combination was already dialed in the AMSEC safe, so Jewell was able to open it by picking the lock. Jewell testified that he did not attempt to see what was in the safe, but was able to discern that either rifles or guns were in the AMSEC safe. Jewell then proceeded to drill the Mosler safe and open it. Jewell did not look at anything in the Mosler safe, but he did see Vivian removing papers from the safe as he was taking his tools out of the house. According to Jewell, the safes did not appear to have any flood damage, and, given how Vivian was acting, he believed the situation to be a divorce matter.
Vivian removed the guns and ammunition from the AMSEC safe and took them back to Birmingham. She also went through the documents in the Mosler safe and removed the ones she determined related to marital assets and took them back to Birmingham to have them photocopied. When she returned to Birmingham, she telephoned the Mountain Brook police department and asked them to hold the guns for safekeeping. On June 8, 1997, Vivian returned to the Rainbow City house and replaced some of the items in the safes. She testified that she kept some items, however, "as evidence." Specifically, she kept canceled checks, which she believed documented the transfer of marital assets to Howard's immediate family, as well as items such as books on obtaining a second passport and how to transfer assets into offshore accounts. *Page 27 
Howard and the couple's sons returned from their rafting trip on the evening of June 8. At approximately 9:00 or 10:00 that night, Howard entered the study of the Birmingham house to use the copier and found that Vivian had inadvertently left a document that had been in one of the safes on the copier. Howard immediately left the Birmingham house and drove to Rainbow City, where he found that the safes had been entered. Howard testified that "a lot" of the contents were missing from the safes, including Joseph and Sylvia's wills and estate-planning documents, Sylvia's jewelry, and the Israeli stamps. Howard telephoned the Rainbow City police to report the entry into the safes, and a police report was made at 2:37 a.m.
Vivian testified at trial that none of the items Joseph and Sylvia claimed were missing from the Mosler safe were in the safe when she entered it and that she did not take any of the items Joseph and Sylvia claim are missing.
 "[PLAINTIFFS' COUNSEL]: And I want to know if any of those items listed in there are in your possession or have been in your possession since June 6, 1997, or if you took them out or returned them?
 ". . . .
 "[VIVIAN]: None of those items were there, and I can tell you for sure if I had the financial information on [Joseph and Sylvia] Friedman it would have come out in my divorce trial. I would have loved to have that information."
 "[PLAINTIFFS' COUNSEL]: Now, as I understand, what you're saying is that whatever you took to Birmingham, part of it you kept and the rest of it you brought — Did you bring the originals back or did you bring copies back?
 "[VIVIAN]: I brought mostly originals back. I kept a few checks. I have the originals of the checks of $20,000 to [Howard's brother and sister-in-law], and the multiple $10,000 checks to everybody else in the family. I kept those originals.
 "I kept some of the books on, how to illegally obtain a second passport, how to transfer your assets overseas."
 "[DEFENSE COUNSEL]: Did you find Israeli stamps and take them?
 "[VIVIAN]: No.
 "[DEFENSE COUNSEL]: Did you find any jewelry in these safes and take [it]?
 "[VIVIAN]: No.
 "[DEFENSE COUNSEL]: Either in the gun safe or Mosler safe? "[VIVIAN]: No. And there was cash in there, and I did not take it."
Subsequent to the incident that is the subject of the underlying cause of action, Howard and Vivian became embroiled in a bitter divorce, and the marriage was dissolved in 1999 or 2000.
Although a police report was prepared, no criminal charges were ever brought in relation to the unauthorized entry into the safes. Instead, Joseph and Sylvia brought this detinue and conversion action against Vivian in the Etowah Circuit Court on January 23, 1998. The trial court heard ore tenus testimony on May 27, 2003, October 2, 2003, and August 19, 2004. On July 1, 2005, the trial court entered a judgment in favor of Vivian Friedman. On July 22, 2005, Joseph and Sylvia filed a motion to alter, amend, or vacate the judgment, as well as a motion for a new trial pursuant to Rule 59, Ala. R. Civ. P. The trial court denied their motions on September 12, 2005. They appealed. *Page 28 
 II. Standard of Review
The evidence in this case was presented to the trial judge in a bench trial. "`When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.'" Smith v.Muchia, 854 So.2d 85, 92 (Ala. 2003) (quoting AllstateIns. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996));see also First Nat'l Bank of Mobile v. Duckworth,502 So.2d 709 (Ala. 1987). As this Court has stated:
 "`The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to `disputed issues of fact,' whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672
(Ala. 1995). The ore tenus standard of review, succinctly stated, is as follows:
 "`[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.'"
Reed v. Board of Trs. for Alabama State Univ.,778 So.2d 791, 795 (Ala. 2000) (quoting Raidi v. Crane,342 So.2d 358, 360 (Ala. 1977)). However, "that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts." Ex parteBoard of Zoning Adjustment of Mobile, 636 So.2d 415, 417
(Ala. 1994).
 III. Analysis
Joseph and Sylvia argue that the trial court's judgment "was contrary to the law and the facts." (Joseph and Sylvia's brief, p. 4.) In summary, Joseph and Sylvia argue that because possession, once established, is continuous in nature, it must be presumed that the items in question were in the Mosler safe when Vivian entered the safe and that Vivian's testimony was implausible, given what they allege is her lack of truthfulness. In other words, Joseph and Sylvia ask this Court to reweigh the evidence, which is something this Court cannot and will not do.
 "`"Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court. . . ."' Ex parte Roberts, 796 So.2d 349, 351 (Ala. 2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996)). `When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact' Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913
(Ala.Civ.App. 1985). `[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.' Ex parte Foley, 864 So.2d 1094, 1099 (Ala. 2003) (citations omitted)."
Ex parte R.E.C., 899 So.2d 272, 279 (Ala. 2004).
Next, Joseph and Sylvia argue that to obtain a judgment in detinue at common law, they must prove only that they owned the chattel in question and that they are entitled to possess it. We disagree.
Joseph and Sylvia correctly note that "[t]he statutory action of detinue combines *Page 29 
the common-law actions of detinue and replevin. Common-law detinue still exists in this state and does not involve recovery of property at the time of suit but only after judgment." Richardson v. First Nat'l Bank of Columbus,Go., 46 Ala.App. 366, 371-72, 242 So.2d 676, 680
(Civ. 1970). However, they argue that, under common-law detinue, they are not required to prove that Vivian was in possession of the property in question when the complaint was filed in the underlying action; that proof is required under statutory detinue, as codified at § 6-6-250 et seq., Ala. Code 1975. In support of their argument, they cite a litany of cases in which the only elements of detinue mentioned are ownership and the right of immediate possession. See, e.g., Steger v.Everett Bus Sales, 495 So.2d 608 (Ala. 1986);Hollingsworth v. Case, 267 Ala. 165, 100 So.2d 772
(1958); Hollimon v. McGregor, 225 Ala. 517,143 So. 902 (1932); La Rue v. Loveman, Joseph Loeb,220 Ala. 2, 127 So. 241 (1929); Minge v. Clark,193 Ala. 447, 69 So. 421 (1915); Bruce v. Bruce, 95 Ala. 563,11 So. 197 (1892); and Hooper v. Britt,35 Ala. App. 612, 51 So.2d 547 (1951). Other cases involving common-law detinue include proof that the defendant had wrongfully taken possession of the chattel. See, e.g., Thrasher v.Thrasher, 674 So.2d 595 (Ala.Civ.App. 1995); CentralBank of the South v. Patterson, 607 So.2d 204 (Ala. 1992); and Murray v. Dempsey, 521 So.2d 1345
(Ala.Civ.App. 1988).
The Court of Civil Appeals addressed the origin of these diverging lines of cases regarding detinue in Ray v.Blackwell, 521 So.2d 44 (Ala.Civ.App. 1988). InRay the Court of Civil Appeals noted:
 "The legal issue is whether it was incumbent upon the plaintiff to prove that this defendant was in possession of the rig at the time of the filing of this suit.
 "A number of Alabama cases hold that, in order for the plaintiff to be successful in a detinue action, the plaintiff must prove, as of the time he filed his case, that he had a general or special property right in the chattel sued for, that he had a right to its immediate possession, and that the defendant had possession of the property. For examples, see Galleon Industries, Inc. v. Lewyn Machinery Co., 50 Ala.App. 334, 279 So.2d 137, cert. denied, 291 Ala. 779, 279 So.2d 142 (1973); and Chrysler Credit Corporation v. Tremer, 48 Ala. App. 675, 267 So.2d 467 (1972).
 "On the other hand, other Alabama cases state that the legal title to personal property and the right to its immediate possession are sufficient to support an action of detinue. For example, see Cornelius v. Copeland, 274 Ala. 337, 148 So.2d 620 (1963).
 "One probable reason for any apparent conflict in those two lines of cases was occasioned by a prior code section as to the effect of a plea of the general issue in a detinue case. It was provided in Title 7, Section 934, of the Codes of 1940 and 1958 that, where a defendant filed a plea of the general issue, such plea admitted the possession of the suit property by the defendant at the commencement of the suit. Chrysler Credit Corporation, supra. That code section is not included in the 1975 Code of Alabama.
 "In Cornelius, supra, the defendants had filed pleas of the general issue; hence it was admitted by the defendants under the then applicable statutory pleading rule that they possessed the property in issue at the time the plaintiff instituted his case. Accordingly, it was not necessary in Cornelius to state that possession by the defendants was one of the essential elements for the plaintiff to *Page 30 
prove in order to support his detinue action." 521 So.2d at 45.
We agree with the Court of Civil Appeals that common-law detinue has always included possession of the subject chattel by the defendant as an element. In the cases cited to this Court by Joseph and Sylvia for the proposition that no proof of such an element is required in common-law detinue, it was either undisputed that the defendant was in possession of the subject chattel or the defendant had pleaded the general issue, thereby admitting possession.
Under the interpretation of common-law detinue advanced by Sylvia and Joseph, one could randomly select any individual against whom to bring a detinue action and successfully obtain a judgment against that individual so long as the plaintiff had an ownership interest in some piece of property, had an immediate right to possession of the property, and the property was missing. That is not the law of this State, nor has it ever been the law of this State. Joseph and Sylvia were required to prove that Vivian had wrongfully taken the jewelry and stamps and that she was, at the time they filed their action, in possession of them. After a careful review of the record, this Court finds no indication that the trial court's judgment was clearly erroneous and against the great weight of the evidence.
Joseph and Sylvia argue further that Vivian raised the general issue as a defense and therefore admitted that she was in possession of the jewelry and stamps. They argue that, although the statute formerly found in Title 7, § 934, Ala. Code 1940,[2] was not carried forward in the Alabama Code 1975, the principle that merely raising the general issue is an admission of possession is so ingrained in the case-law regarding common-law detinue, which has not been explicitly overruled, that it remains the law in Alabama.
"A plea of the general issue denies allegations of each count of the complaint and requires proof of material allegations thereof." Pasquale Food Co. v. L H Int'lAirmotive, Inc., 51 Ala.App. 127, 135, 283 So.2d 438, 445
(Civ. 1973). Vivian did not plead the general issue. In her answer, Vivian specifically denied the allegations in each paragraph of the complaint and raised three affirmative defenses. Thus, Joseph and Sylvia's argument is without merit.
Even had Vivian pleaded the general issue in her answer, however, Joseph and Sylvia's argument would still be without merit. Although this Court has never explicitly overruled the line of cases regarding pleading the general issue in a detinue case, it has been superseded by rule as well as by action of the legislature. Appendix II, "Statutes and Rules Superseded," of the Alabama Rules of Civil Procedure, states:
 "The following statutes or parts thereof are superseded by the Alabama Rules of Civil Procedure in Courts subject to the Alabama Rules of Civil Procedure.

"Title7 ARCP
". . . . . . . .
"§ 934 Rule 8 Effect of General Issue
 in Detinue Suit."

Likewise, § 1-1-10, Ala. Code 1975, states in pertinent part: "Subject to the provisions of this section, or as may be otherwise provided in this Code, all statutes of a public, general and permanent *Page 31 
nature, not included in this Code, are repealed." Because the statute found in Title 7, § 934, Ala. Code 1940 (Recomp. 1958), is found nowhere in the Alabama Code 1975, it was repealed. Thus, the plea of the general issue by a defendant in an answer no longer frees a plaintiff from establishing possession by a defendant in a detinue action.
Finally, Joseph and Sylvia argue that the trial court erred in not awarding them damages based on Vivian's having the Mosler safe drilled to open it. Specifically, they claim they "pleaded conversion specifically, alleged the wrongful interference Vivian Friedman committed, and they proved at trial that she damaged the safe intentionally." (Joseph and Sylvia's brief, p. 17.) They go on to state: "The Joseph Friedmans then specifically called out the expense of $200 that it cost to repair the safe in their request for damages." (Joseph and Sylvia's brief, pp. 17-18.) No reference to the record accompanies these observations. Also, nowhere in the statement of facts in Joseph and Sylvia's brief does it reference the damage to the safe.
This Court does not have the obligation to search the record for substantiation of unsupported factual matter appearing in an appellant's brief in order to determine whether a judgment should be reversed. Johnson v. Stewart, 854 So.2d 544,551-52 (Ala. 2002) ("Initially, the appellant's brief must include `[a] full statement of facts relevant to the issues presented for review, with appropriate references to the record.' Rule 28(a)(7) (emphasis added). . . . Also, the argument of each party must contain `the contentions of the [party] with respect to the issues presented, and the reasons therefor, with citations to the . . . parts of the recordrelied on. "` Rule 28(a)(10) (emphasis added). . . . Obviously,`" this Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal." `Brannan Guy, P.C. v. City of Montgomery,828 So.2d 914, 920 (Ala. 2002) (quoting Totten v. Lighting Supply, Inc., 507 So.2d 502, 503 (Ala. 1987))."). Because Joseph and Sylvia failed to comply with the rudimentary requirement of Rule 28, Ala. R.App. P., we need not address this claim.
 IV. Conclusion
As to the issues before us, the trial court correctly applied the law to the facts, and its conclusion is not clearly erroneous or against the great weight of the evidence. We therefore affirm its judgment.
AFFIRMED.
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[2] The Code of 1940 was recompiled in 1958, and the statute retained the same title and section number in the 1958 recompilation.